**In re Gary W. NEILL.**

**Bankruptcy No. 92–33667.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 23, 1993.

[redacted]

Anthony B. DiSalle, Trustee in Bankruptcy, Toledo, OH.

Gordon R. Barry, Toledo, OH, for debtor.

Louis S. Cataland, Columbus, OH, for Sav. of America.

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court on the motion of Debtor Gary Neill (the "Debtor") to reconsider this Court's Order Sustaining Objections to Confirmation. This Court finds that the Debtor's motion is not well taken and should be overruled.

### Facts

This Court sustained the objections to Debtor's chapter 13 plan (the "Plan") by Savings of America ("Bank") on August 5, 1993. Bank holds a note payable from Debtor secured by a first mortgage on Debtor's personal residence (the "Mortgage"). Bank had previously obtained a judgment of foreclosure on this property on August 16, 1989.

Debtor filed a petition under chapter 13 of title 11 on October 15, 1992 ("Petition"). Debtor had previously filed a petition under chapter 13 on August 30, 1989 ("Prior Petition") which was voluntarily dismissed by Debtor on April 6, 1992.

The Court held a telephonic pretrial on objections to confirmation of Debtor's chapter 13 plan by Savings of America ("Bank") on June 17, 1993. At this pretrial, the Court ordered the Debtor to file an affidavit concerning the Mortgage "with specificity as to what payments were made, how they were applied, and to what account, and documentation as to payments of real estate taxes and insurance". *See* Order Filed June 17, 1993. The Court extended the filing date for this affidavit twice on the request of Debtor's counsel ("Coun-

sel"). The Debtor did not seek additional extensions of time.

On Debtor's failure to file this affidavit by the extended due date ("Unfiled Affidavit"), the Court sustained Bank's objection to confirmation of Debtor's Plan based on the affidavit of Bank employee Rudolph Orozco ("Orozco Affidavit") which the Court treated as unopposed. The Orozco Affidavit stated that the Debtor's arrearages on the Mortgage at the date of filing of the Petition were $53,920.62. The Orozco Affidavit further stated that Debtor's arrearages on the Mortgage increased by $5,724.62 during the time after the Prior Petition and before this Petition.

In the Plan, the Debtor proposed to pay all of his creditors a total of $901.00 per month for 24 months. The Court concluded that the Plan was not feasible because the total Plan payments of $901 per month over the Plan term of 24 months would only pay 40% of the arrearages on the Mortgage in its prior order.

The Debtor filed his "Motion For Reconsideration" on August 16, 1993. The "Motion For Reconsideration" asserts that the Unfiled Affidavit resulted from "confusion with [Debtor] and his roommate, [whereby] [Debtor] never received the message from [Counsel's] office that an [a]ffidavit was due to be filed by July 26, 1993". *See* "Motion For Reconsideration", p. 1. Further, the Debtor alleges that the information provided by Bank in the Orozco Affidavit was fraudulent, that the arrearages under the Mortgage resulted because Bank would not accept payments on the Mortgage, and that Debtor could modify the Plan to pay for arrearages within 36 months. The "Motion For Reconsideration" has not provided this Court with any additional evidence to weigh in deciding this motion. The Debtor has provided what purports to be the affidavit of the Debtor ("Neill Affidavit"). *See* Affidavit of Gary Neill dated August 11, 1993. However, the only information contained in the Neill Affidavit is the Debtor's signature. In addition, the Debtor has provided this Court with what purports to be Debtor's real estate tax bill for the first half of 1992

(the "Tax Bill"). However, the Tax Bill cannot enter the record based merely on the assertions of Counsel in the "Motion For Reconsideration". A photocopy of the same Tax Bill had previously been submitted to the Court as an attachment to Debtor's affidavit in response to Bank's "Combined Request for Admissions, Interrogatories and Production of Documents". *See* Affidavit of Gary W. Neill dated June 8, 1993. Thus, the Tax Bill was already part of the record which the Court considered in sustaining Bank's objections to confirmation.

## DISCUSSION

Read generously, the Debtor's motion for reconsideration could be interpreted as both a request for an extension of time under Bankruptcy Rule 9006 and as a request that the Court reconsider its' prior order sustaining Bank's objection to confirmation of Debtor's Plan. In either event, Debtor has not convinced the Court of the improvidence of its' prior order.

**Request For Extension Of Time Under Bankruptcy Rule 9006(b)(1)**

■ Bankruptcy Rule 9006(b)(1) permits a court to extend the time for filing because of excusable neglect " 'in accordance with the equities of the situation' ". *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (quoting the Advisory Committee Notes under former Rule 10–401(b)). In *Pioneer*, the Court held that excusable neglect was not limited to "situations where the failure to timely file is due to circumstances beyond the control of the filer". *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1495. Though noting that excusable neglect is a "somewhat 'elastic concept' ", the Court stated that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect". *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1496 (footnote omitted); *See also Harlow Fay, Inc. v. Fed. Land Bank of St. Louis (In re Harlow Fay, Inc.)*, 993 F.2d 1351 (8th Cir. 1993) (court held that extension of time for "excusable neglect" was unwarranted where debtor attempted to file an untimely modification of its' chapter 11 plan one week late and excuse advanced by debtor's counsel was that late filing was caused by counsel's reduction in staff because of financial problems and continuing problems due to firm's relocation). Factors which a court may consider in this equitable determination include:

[1.] the danger of prejudice to the [opposing party],

[2.] the length of the delay and its potential impact on the judicial proceedings,

[3.] the reason for the delay, including whether it was within the reasonable control of the movant,

[4.] and whether the movant acts in good faith.

*Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498 (citation omitted).

■ Suffice it to say that the "equities of the situation" do not favor extending the filing deadline for Debtor's affidavit.

Counsel had already requested, and received, two extensions of the filing deadline. Counsel's articulated reasons for the Unfiled Affidavit are that the Debtor "was away on vacation" and "[b]ecause of confusion with him and his roommate, Mr. Neill never received the message from my office that an [a]ffidavit was due to be filed by July 26, 1993". Counsel provided no explanation as to why an additional extension of the filing deadline was not requested.

Further delaying the efforts of creditors who have been held at bay by the automatic stay of 11 U.S.C. § 362 for almost 11 months because the Debtor did not receive a message from his attorney on return from his vacation in Florida would not be equitable. This delay had a deleterious impact on the timely administration of the bankruptcy case. Additionally, the delay was within the Debtor's reasonable control. Debtor knew that he had a bankruptcy case pending in this Court and could have communicated with his attorney periodically to determine the status of the case. Also, the fact that Counsel may not have contacted his client in a timely manner to schedule a

deposition in this case does not constitute excusable neglect. This Court need not allocate blame between Debtor and Counsel. " '[Debtor] voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.' " *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499. Lastly, the Court cannot conclude that the Debtor's failure to file the Unfiled Affidavit was in good faith. Therefore, The Court will not extend the filing deadline because Debtor's failure to meet the filing deadline does not constitute "excusable neglect".

**Reconsideration of Order Sustaining Objections to Confirmation**

■ At the outset, the Court notes that a motion for reconsideration serves the limited function of correcting "a manifest error of law or fact or to present newly discovered evidence". *In re James B. Downing & Co.,* 94 B.R. 515 (Bankr.N.D.Ill.1988) (citations omitted); *See also Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207 (5th Cir. 1986).

■ The Debtor has not provided the Court with any additional evidence. Specifically, the Debtor has not provided an affidavit "with specificity as to what payments were made, how they were applied, and to what account, and documentation as to payments of real estate taxes and insurance". *See* Order Filed June 17, 1993. From Debtor's failure to provide such affidavit, this Court can only infer that Debtor is either incapable of providing or unwilling to provide such information. Counsel's assertions do not constitute proof of the matters asserted. The Neill Affidavit contains no more than the Debtor's signature. Further, the Tax Bill, which was part of the record considered in this Court's prior order, has a tenuous connection, at best, to the amount of arrearages on the Mortgage.

**Feasibility Of The Plan**

■ As stated in this Court's prior order, the Plan does not provide for curing the arrearages on the Mortgage within a reasonable time as required by 11 U.S.C. § 1322(b)(5). Based on the arrearages stated in the Orozco Affidavit of $53,920.62, Debtor's proposed Plan payment to all creditors of $901.00 per month for the 24 month duration of the Plan, if devoted entirely to payment of the Mortgage, would cure only 40% of the arrearages on the Mortgage over the life of the Plan. "[O]nce an objecting party has established support for its' objection, Debtor bears the burden of proving the plan is feasible." *In re Craig,* 112 B.R. 224, 225 (Bankr. N.D.Ohio 1990) (citation omitted). Since this Court's prior order, the Debtor has not provided any additional evidence of his ability or willingness to increase his payment under the Plan or extend the life of the Plan.

Assuming arguendo that Debtor could amend the Plan to last for 36 months and that all of Debtor's $901.00 Plan payment was devoted to cure the arrearages on the Mortgage, Plan payments by the Debtor would repay only 60% of the arrearages on the Mortgage over the life of the Plan.

Thus, the Debtor's Plan is not feasible.

**Term Of The Plan**

■ The Court disagrees with Counsel's assertion that Debtor can "modify his Chapter 13 Plan, to provide for full payment of the arrearages within a 36 month period". "Motion For Reconsideration", p. 2. Implicit in this statement is the assumption that the Debtor still has at least 36 months from the date that this motion was filed in which to cure such arrearages. "[T]he [P]lan, as proposed, can not provide for a term of payments in excess of three years unless the court, for cause shown, extends the period". *In re Duckett,* 139 B.R. 6, 8 (E.D.Tex.1992). The Debtor has not shown "cause" to extend the period for his Plan beyond three years. Just as the court in *Duckett,* this Court "is convinced that the appropriate time from which to begin calculating the length of a Chapter 13 Plan is the date at which the debtor is first obligated to begin making payments to the Chapter 13 Trustee". *Duckett,* 139 B.R. at 8–9. *See also Cobb v. Mortgage Default Services (In re Cobb),* 122 B.R. 22 (Bankr.E.D.Penn.1990) (noting that the cumulative effect of Bankruptcy Rule 3015

and 11 U.S.C. § 1326(a)(1) dictates that the time to calculate the running of a chapter 13 plan begins 45 days after filing the case and that to hold otherwise would be to allow counsel to manipulate the time periods listed in 11 U.S.C. § 1322(c) by delaying confirmation). Debtor was obligated to begin payments on the Plan in December, 1992. *See* Motion And Order To Commence Interim Payments. Therefore, modification of the Plan to cure arrearages on the Mortgage beyond December, 1995 would violate the dictates of 11 U.S.C. § 1322(c).

**Lack Of Good Faith Under 11 U.S.C. § 1325(a)(3)**

 Additionally, the Court's previous order concluded that the Debtor's plan was not filed in good faith. The Debtor has not offered any evidence to alter this conclusion. "The party who seeks a discharge under Chapter 13 bears the burden of proving good faith." *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990) (citation omitted). The 12 nonexhaustive factors which a court may examine in determining whether a debtor has proposed a plan in good faith include:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*In re Caldwell*, 895 F.2d at 1126–27.

The Debtor has failed to propose a plan which will pay off arrearages on the Mortgage during the term of such plan. Further, the brief term of the Plan, 24 months, leads the Court to doubt Debtor's sincerity.

Also, the fact that Debtor's bankruptcy schedules list arrearages on the Mortgage as $12,500, a gross mischaracterization of the amount of arrearages due on the petition date, leads this Court to believe that the Debtor has attempted to mislead the Court. *See* Debtor's Petition, Schedule D, p. 2. The Orozco Affidavit lists the arrearages on the Mortgage as $53,920.62. *See* Order Sustaining Objections To Confirmation. Since Debtor has not provided any proof as to the amount of the arrearages, this Court can only conclude that the amount of arrearages listed in the unopposed Orozco Affidavit is accurate. Debtor's gross mischaracterization of the amount of arrearages due on the Mortgage cannot be attributed to mere inadvertence.

Further, the Petition represents the Debtor's second filing under Chapter 13. This fact, coupled with the fact that this filing appears to be a thinly veiled attempt to avoid a foreclosure sale of the subject property of the Mortgage, militates in favor of finding that Debtor's petition was filed in bad faith. In dealing with an analogous case in *In re Doss*, this Court stated that:

[u]pon review of the record, the Court finds that Debtor has acted in bad faith and his petition should be dismissed. That is, Debtor ... ha[s] engaged in serial filings, frustrating and delaying creditors ... ability to enforce their rights

against Debtor. These filings have the effect of continuing, and reimposing, the automatic stay, [and] preventing creditors from exercising their rights against their collateral.

*In re Doss*, 133 B.R. 108, 110 (Bankr. N.D.Ohio 1991) (citation omitted).

**Willful Failure To Abide By Orders of Court**

The Debtor willfully failed to abide by orders of court in failing to submit the Unfiled Affidavit in violation of 11 U.S.C. § 109(g)(1). The cumulative effect of the Unfiled Affidavit, Debtor's attempt to mislead the Court as to the amount of arrearages on the Mortgage, and the fact that the Petition was filed in bad faith represents a repeated pattern of misconduct. Such, "repeated misconduct supports an inference of willfulness". *In re King*, 126 B.R. 777, 780 (Bankr.N.D.Ill.1991) (citation omitted); *See also In re Miller*, 143 B.R. 815, 818 (Bankr.W.D.Pa.1992) ("A finding of willfulness ... requires a showing that debtors had notice of their responsibility and intentionally disregarded it or demonstrated 'plain indifference' "). Therefore, this Court shall prohibit the Debtor from filing another bankruptcy petition for 180 days from the date of this order.

In light of the foregoing, it is therefore,

ORDERED that Debtor Gary Neill's motion for reconsideration be, and it hereby is, overruled. It is further.

ORDERED that Debtor Gary Neill shall not file, and the Clerk of Court shall not accept from Debtor Gary Neill for filing, another petition for relief under the Bankruptcy Code for 180 days from the date of this opinion and order.