In re Lawrence G. WILLIAMS, Debtor.

Lawrence G. WILLIAMS, Plaintiff,

v.

UNITED STATES of America, Internal Revenue Service, et al., Defendants.

Bankruptcy No. 90–12125.
Adv. No. 91–1047.

United States Bankruptcy Court,
D. Rhode Island.

Oct. 24, 1995.

Dennis L. Stein, Gerard Riso, Kurtzman, Haspel & Stein, Spring Valley, NY, John Boyajian, Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Debtor/Plaintiff.

D. Patrick Mullarkey, Chief, Civil Trial Section, Northern Region, Tax Division, Peter Sklarew, Gerald Miller, Janet Reno, Attorney General of the United States, Robert Rubin, Secretary of the Treasury of the United States, U.S. Department of Justice, Charles J. Cannon, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for the United States.

Michael Iannotti, U.S. Attorney's Office, Providence, RI, for the Internal Revenue Service.

Sheryl Serreze, Office of the U.S. Trustee, Providence, RI.

*DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION TO VACATE, ALTER, OR AMEND ORDER AND JUDGMENT*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

This adversary proceeding was brought by the Debtor, Lawrence Williams, for a determination that he has no federal tax liability. The Internal Revenue Service says he owes $22 Million Dollars. Before us for consideration today is the Motion of "Defendant United States of America, of Charles J. Cannon, Esq., of William Blagg, Esq., and of Janet Reno, Attorney General of the United States, and Robert Rubin, Secretary of the Treasury

of the United States of America,[1] to Vacate, to Alter or Amend Order or Judgments, or for a New Trial" regarding our April 14, 1995 Decision and Order, *Williams v. United States (In re Williams)*, 181 B.R. 1 (Bankr. D.R.I.1995). The Movants seek

> an order reconsidering, vacating, altering, or amending the order dated April 14, 1995.... In the alternative, the movants seek either a new trial or hearing or leave to reopen and to supplement the record with additional evidence, including testimony, on the sanctions issue.

(Motion to Vacate, to Alter, or Amend, at 1.)

For the reasons discussed below, the Motion is GRANTED in part (see pages 8, 9, 12, 13, and 23), and DENIED as to the rest.

## DISCUSSION

The Movants take serious issue with an April 14, 1995 Decision and Order (hereinafter "Decision") wherein this Court granted the Plaintiff's Motion for Sanctions under Fed.R.Civ.P. 37(b), and *inter alia*, ordered the Internal Revenue Service to pay the Plaintiff's reasonable legal fees and expenses incurred in forcing compliance with prior discovery orders. As an additional sanction, based upon findings and conclusions made at the end of a lengthy hearing, Messrs. Blagg and Cannon were ordered "to [each] pay [personally] $750 to the Clerk of the Bankruptcy Court, for deposit into the General Fund." *Williams*, 181 B.R. at 5.

It is the $750 in personal sanctions that has generated a deluge of literary overkill by the Movants that exceeds anything previously seen by this Court. In their effort to obtain a reversal of the personal sanctions, and to extract an apology from the Court for its allegedly wrong call here, the Movants have filed motions, memoranda, affi-

---

1. Janet Reno and Robert Rubin have joined in the Motion, asserting that "the order of the bankruptcy court effectively infringes upon the discretionary powers of the Attorney General and the Secretary of the Treasury and their respective delegates to manage their respective executive departments, all in violation of the constitutional principle of separation of powers. [Reno and Rubin] further assert that in acting without notice to the United States of America, to the Attor-

ney General, and to the Secretary of the Treasury of its intent to limit their authority and discretion to reimburse and without giving them an opportunity to be heard, the bankruptcy court has deprived the United States of America, the Attorney General and the Secretary of the Treasury of their right to the substantive equivalent of due process." (Motion to Vacate, to Alter, or to Amend, at 3.)

davits, declarations, and other documents totaling approximately 260 pages, with over 200 footnotes.[2] The Movants could and should have delivered their message in far less time and space. Such voluminous filings are burdensome and unfair to courts and litigants who are required to read, analyze, and respond to them, and to prevent similar future excesses in this and other cases, we have belatedly promulgated Administrative Order 082195 which, *inter alia*, sets page limits and footnote type size requirements. Having said that, but also in fact having closely examined *all* of the Movant's papers in these proceedings, we will try to cull out the rhetoric and address the merits of the Government's arguments.

## I. Standards to Alter or Amend Judgment/New Trial

■ The grounds for a new trial or amendment of judgment are set forth in Fed.R.Civ.P. 59(a), which is made applicable in bankruptcy by Fed.R.Bankr.P. 9023.[3] The scope of review under Rule 9023 extends only to errors of law or fact, and to cases where evidence is newly discovered. *In re Neill*, 158 B.R. 93, 97 (Bankr.N.D.Ohio 1993); *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207 (5th Cir.1986) (analyzing Rule 9023's equivalent under Fed.R.Civ.P. 59 & 52(b)). More to the point in this case, a motion to alter or amend judgment "cannot be considered 'a vehicle for raising issues or citing authorities a party could or should have presented prior to the court's ruling. It is not a vehicle for rehashing arguments previously made or refuting the court's prior ruling.'" *In re Bank of New England Corp.*, 142 B.R. 584, 587 (D.Mass.1992), *quoting, In re Grand Builders, Inc.*, 122 B.R. 673, 675–76 (Bankr. W.D.Pa.1990).

Recently, in *In re Almacs, Inc.*, 181 B.R. 143 (Bankr.D.R.I.1995), we discussed the standard for reconsideration[4] under the Federal Rules of Bankruptcy Procedure:

"[T]o succeed on a motion to reconsider, 'the Court requires that the moving party show newly discovered evidence or a manifest error of fact or law.'" *Champagne v. Equitable Credit Union (In re Champagne)*, 146 B.R. 506, 508 (Bankr.D.R.I. 1992) (*quoting In re Wedgestone Financial*, 142 B.R. 7, 8 (Bankr.D.Mass.1992)); *In re Bank of New England Corp.*, 142 B.R. 584, 587–88 (D.Mass.1992). In *Champagne* we adopted the bankruptcy judge's remarks in *In re Armstrong Store Fixtures Corp.*, 139 B.R. 347, 350 (Bankr. W.D.Pa.1992) ...:

> [i]nitial arguments are not to be treated as a dress rehearsal for a second attempt to prevail on the same matter. Counsel is also expected to 'get it right' the first time and to present all the arguments which counsel believes support its position. Arguments which counsel did not present the first time or which counsel elects to hold in abeyance until the next time will not be considered.

139 B.R. at 350; *see also Champagne*, 146 B.R. at 508.

*In re Almacs*, 181 B.R. at 143–44. With these principles in mind, we will address the specifics of the motion now under consideration.

## II. Reconsideration of Findings of Fact

■ To begin with, there is no newly discovered evidence, and this leads us straight to the Cannon and Blagg Declarations (Docket Nos. 47 & 48), and much of the writing submitted on their behalf by Peter Sklarew, Esq., which contain mostly self-serving pronouncements of the allegedly righteous manner in which IRS attorneys relate to opposing counsel—none of which is in the record, however. The Movants have also described

**2.** These filings do not include a recent flurry of letters received by the Court from *both* the Plaintiff and the Movants, which have been returned to the senders, as improper pleadings.

**3.** The rule states in part: "A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States."

**4.** By "reconsideration", we refer to the same standard applicable under Fed.R.Bankr.P. 9023. *See Equity Sec. Holders' Comm. v. Wedgestone Fin. (In re Wedgestone Fin.)*, 152 B.R. 786, 788 (Bankr.D.Mass.1993).

at length the private thought processes of Government lawyers, to show why they conducted their part of the January 1995 Rule 37(b) hearing as they did.

Mr. Blagg, for example, explains that he was "very uncomfortable" on cross examination and that this caused him "to limit some of ... [his] answers." He also says "having thoroughly reviewed the files since the Decision, my recollection has been refreshed in several areas in which I was not able to recall events fully at the hearing." These are meritless afterthoughts, at best. So is Mr. Cannon's lament that "[h]ad I the slightest idea that the Court was considering sanctions against me personally, I would have taken the witness stand and offered many of the following facts at the hearing...." He then goes on for more than twenty pages describing the high points of his legal career, to demonstrate that he could not have conducted himself as this Court found him to have behaved in this litigation. These after-the-fact reminiscences are not deserving of a time-consuming response, and we simply refer the Movants to Rule 37(b).[5]

The Government is also reminded of its own stipulation in the Proposed Joint Pretrial Order, that one of the issues of law to be determined was "[w]hether the appropriate sanction to be imposed against the Government, under the circumstance, should be the striking of the Government's pleadings and the entry of judgment in favor of the plaintiff and against the Government, *or some other sanction pursuant to Rule 37(b) of the Federal Rules of Civil Procedure and Rule 7037(b) of the Bankruptcy Rules.*" (Proposed Joint Pre–Trial Order Submitted By the Government, at 12. (emphasis added).) Mr. Cannon made an informed, tactical decision not to testify, *after being specifically queried by the Court as to his intentions,* immediately upon his arrival at the hearing on January 23, 1995. (See Transcript, Jan.

23, 1995, at 23–24.) The reams of information now proffered by the Movants were all available at the time of the hearing which lasted three days, and where both sides were given wide latitude to fully develop and present their positions. Based on the record and the applicable law, the Declarations of Charles Cannon and William Blagg, as well as those portions of Mr. Sklarew's arguments not based on the record are rejected and stricken, as impermissible second bites at the apple.

Several arguments by the Movants do have merit, however, and as to those we agree that corrections and amendments are in order, i.e., the Decision under scrutiny states: "On January 7, 1992, after even further hearing, we overruled its objection and ordered the IRS to produce *all requested documents* within 45 days. (See Joint Exhibit 1, January 14, 1992 Order.) Again, IRS did nothing...." *Williams,* 181 B.R. at 3. The Movants correctly point out that the IRS *did* produce *some* documents, on February 28, 1992. We acknowledge the misstatement, apologize, and strike from the Decision the words "[a]gain, IRS did nothing."[6]

We also retract and delete footnote 4 which states "[i]t is as though the IRS never heard of response/objection deadlines, the Federal Rules of Civil Procedure, or the Rules of Bankruptcy Procedure." *Williams,* 181 B.R. at 3 n. 4. By this redaction we acknowledge that the IRS has, on occasion, filed timely responses (see, e.g., Objection to Motion to Compel, Docket # 10; Objection to Motion to Preclude, Docket # 19; Objection to Motion for Summary Judgment, Docket # 15). Notwithstanding said deletions, however, the bottom line is that by its own admission the IRS has not, to this day, fully complied with a discovery order that is nearly four years old. (See Revised Reply Brief on Behalf of Blagg & Cannon, Docket # 79, at 1–2; U.S. Disclosure Respecting Non–

---

**5.** The Rule states in part: "... the court *shall* require the party failing to obey the order *or the attorney advising that party or both* to pay the reasonable expenses, including attorney's fees, caused by the failure...." Fed.R.Civ.P. 37(b) (emphasis added). Under either the law or the facts, there is no room for claimed surprise by the Movants.

**6.** As to this and all other redactions herein, an appropriate errata will be distributed for publication, simultaneous with the filing of this Decision.

Responsive Document, Docket # 96.[7]) In fact, the Government concedes in its Proposed Joint Pre-trial Order (Docket # 29) that:

> [o]n or about February 28, 1992, the Government produced only certain documents responsive to the requests, failing to produce all consents executed by the Plaintiff, or of the certain partnerships of which plaintiff was a limited partner, of the statute of limitations for the tax years at issue, or the documents concerning the audits of said partnerships to support the Notices of Deficiency with respect to the partnership items listed by the plaintiff on his income tax returns.

(Proposed Joint Pre–Trial Order Submitted By the Government, at 3.)

▄▄▄ The Government also contends that the Court failed to consider the relevancy of the requested documents, and that non-production should have been excused on that ground. In discovery it is the objector who has the (considerable) burden on issues of relevancy. *See Flag Fables, Inc. v. Jean Ann's Country Flags & Crafts*, 730 F.Supp. 1165, 1186 (D.Mass.1989). In the first place, this argument comes much too late, and although the subject was referenced briefly in its papers, the Government did not argue relevance during the sanctions hearing, but instead focused its attention on other issues, principally whether the Debtor had accepted the IRS's arbitrage settlement offer. For our purposes that very tenuous objection was waived, but even if pressed, it would almost certainly have had to be rejected.[8] Also regarding waiver, on numerous occasions Mr. Cannon volunteered, without limitation or

qualification, that he would produce *all* requested items. *See Williams*, 181 B.R. at 5. What has really happened, after all of the arguments, is that the Defendant, with no acceptable reason, failed to produce documents as ordered or as promised, allowed their rights to expire on the issue, and now, feeling very unhappy with the consequences, would like to go back to the beginning, and start again. That option is not available to the Defendant at this time.

### III. *Reconsideration of Conclusions of Law*

In addition to their dissatisfaction with this Court's fact finding abilities, the Movants argue that Bankruptcy Courts lack the authority to impose personal sanctions against government attorneys. They also claim that their Fifth Amendment due process rights were violated, because they were not given sufficient notice and opportunity to present an adequate defense. We address these arguments as follows:

### A. *Personal Jurisdiction Over William Blagg, Esq.*

▄▄▄ Mr. Blagg and the Government argue that Blagg was "merely a gatherer and custodian of the IRS's records which the Justice Department had agreed to produce to the plaintiff," and that therefore, as to him there is no *in personam* jurisdiction. (Cannon and Blagg Brief in Support of 9023 Motion, at 33.) We are skeptical of the genuineness of the Movants' présent position,[9] but because Mr. Blagg in fact did not file a formal entry of appearance, we will err on the side of conservatism and accept the contention that he is not subject to this Court's Rule 37

---

7. While the government considers the produced document to be "non-responsive," that is highly self-serving and unquestionably disputed.

8. "Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1); *see also Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (relevancy in discovery should be broadly and liberally construed).

9. At the commencement of the sanctions hearing, and before the testimony of any other witnesses,

the Plaintiff asked to have Mr. Blagg sequestered. The Government objected strenuously, arguing that Blagg's presence in the courtroom was essential to protect the Government's interest. We accepted that representation, denied the motion to sequester, and allowed Mr. Blagg to remain in the courtroom, *seated with other Government counsel, at counsel table*, for the entire hearing.

Frankly, it never occurred to this Court to inquire as to whether Mr. Blagg had filed an entry of appearance. In the future, however, we will be more careful regarding the requirement of formal appearances by such "custodian/information gatherers," who also are lawyers.

sanctioning powers. Accordingly, the $750 sanction imposed against William Blagg, Esq., is VACATED. Notwithstanding this ruling on a very close call,[10] the findings and conclusions regarding Mr. Blagg's conduct and demeanor remain intact.

## B. *Jurisdiction to Sanction for Contempt*

■ The Government also disputes the authority of an Article I Bankruptcy Court to impose sanctions for contempt at all. That issue was put to rest in this Circuit when the Court of Appeals stated "[i]t is well-settled law that bankruptcy courts are vested with contempt power." *In re Power Recovery Sys., Inc.,* 950 F.2d 798, 802 (1st Cir.1991). The Congressional intent in enacting § 105 of the Bankruptcy Code was to enable the Bankruptcy Court to enforce its own judgments, and there is nothing unconstitutional about the exercise of contempt power by a bankruptcy court. *Kellogg v. Chester,* 71 B.R. 36, 38–39 (N.D.Tex.1987); *In re Haddad,* 68 B.R. 944 (Bankr.D.Mass.1987); *see also Fernos–Lopez v. United States Dist. Court,* 599 F.2d 1087, 1090–91 (1st Cir.), *cert. denied,* 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *In re Newport Offshore, Ltd.,* 88 B.R. 566, 571 (Bankr.D.R.I.1988).

## C. *Due Process*

■ Although there is no *per se* requirement, notice and opportunity to be heard are, of course, desirable when monetary sanctions are imposed, *see Media Duplication Servs., Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1238 (1st Cir.1991), and while a full hearing is not required for every sanction imposed by a court, the sanction must comport with procedural due process requirements. *Id.*

This is the gist of Mr. Cannon's due process argument:

[t]he first time monetary sanctions (against the government) and/or decision on the merits were ever mentioned was by the

Court at the conclusion of Mr. Riso's oral argument, 2/25/95 Tr. At 218–19, and that mention was not in the form of any indication that such sanctions were deemed appropriate. The first time plaintiff moved for either default judgment or recoupment expenses was in his post trial brief.

(Brief on Behalf of William J. Blagg and Charles J. Cannon in Support of Rule 9023 Motion, at 15.) The Government's complaints about insufficient notice and lack of due process are borderline frivolous (and therefore sanctionable), in that Mr. Cannon: (1) was the attorney of record for the IRS in this proceeding; (2) he prepared, signed and filed a proposed joint pre-trial order at the commencement of the hearing on January 20, 1995, indicating at page 12 that an issue of law to be considered by the Court was "some other sanction pursuant to Rule 37(b) of the Federal Rules of Civil Procedure"; and (3) Rule 37(b) specifically provides for monetary sanctions against the noncomplying party and/or its attorney. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980). As to Mr. Cannon, all notice requirements have clearly been satisfied, the request for relief on due process grounds is without merit, and it is DENIED.

■ The Movants also contend that prior to imposing sanctions against an attorney under Rule 37(b), there must be a finding of bad faith or contumacious behavior. Those elements in fact are present here, but we disagree that the proffered standard is correct. A finding of willful, contumacious or otherwise extreme behavior should precede a *dismissal* of the obstructionist party's claim under Rule 37, but is not as necessary to assess monetary sanctions. *See, e.g., Velazquez–Rivera v. Sea–Land Serv., Inc.,* 920 F.2d 1072 (1st Cir.1990) (the plaintiff's discovery violations were not deemed severe enough to warrant dismissal of the claim, although the monetary sanction against counsel was affirmed).[11] Sanctions under Rule

---

**10.** Mr. Blagg certainly walked and talked like a lawyer in this litigation, and his demonstrated assertiveness as described in the April 14, 1995 Order belies the low profile "civilian" role that he now projects. *See Williams,* 181 B.R. at 3–4.

**11.** This test was applied most conservatively, we think, in this instance, where *token* monetary sanctions were imposed for attorney misconduct, instead of judgment against the IRS on the merits of a $22 Million Dollar tax claim, as demanded by the taxpayer-Plaintiff. The ironic thing

37(b) are appropriate once it is established that a party has failed to comply with a valid discovery order. *See Roadway Express,* 447 U.S. at 763, 100 S.Ct. at 2462–63; *E.E.O.C. v. Sears, Roebuck & Co.,* 114 F.R.D. 615, 626 (N.D.Ill.1987); *see also Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 473 (7th Cir.1984). When contemplating sanctions under Rule 37(b), a court should consider: 1) the facts of the case; and 2) the Court's purpose in imposing the penalty. *Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394 (1st Cir.), *cert. denied,* 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990).

 The Court in *Anderson* held that sanctions under Rule 37 may serve the dual purposes of deterrence and compensation. 900 F.2d at 394. "Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime. Nevertheless, whichever purpose is to be served—and often, sanctions are designed to serve some combination of the two prime purposes—the trial court's discretion in fashioning sanctions is broad." *Id.* at 395; *see also National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976). Also, the degree of culpability is a factor to be considered in determining the severity of the sanction to be applied, *see Sears, Roebuck & Co.,* 114 F.R.D. at 626–27, and acts of culpability may include willful disobedience, gross indifference to an adverse party, or deliberate carelessness. See *Dorsey v. Academy Moving & Storage, Inc.,* 423 F.2d 858 (5th Cir.1970).

 In determining the appropriate amount of a monetary discovery sanction, the award does not have to relate precisely to the cost or expense of the added litigation arising from the discovery abuse. *See, e.g., United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365 (9th Cir.1980). In *Sumitomo,* the District Court was not presented with the exact amount of expense incurred by the defendant when it sanctioned the government attorney, *personally,* $500. *Id.* at

1370–71. The Court of Appeals upheld the award, explaining that an exact accounting of the defendant's damages was not needed and that the $500 sanction was "a measured response to the flagrant disobedience of court orders by government counsel." *Id.* at 1371. Notwithstanding the Government's extreme disagreement with the result here, we see little distinction between our facts and those in *Sumitomo.*

 The Government also insists that the Decision be republished, without using the names of the two sanctioned attorneys. This entire proceeding was conducted on the record, nothing was disclosed to the Court in confidence, and the findings and conclusions as stated in the Decision fairly reflect what happened. The Decision, particularly as it has been amended and redacted, contains our findings of fact *as determined from the record,* which in the judgment of this Court does not call for or justify anonymity. *See United States v. Horn,* 29 F.3d 754, 758 n. 1 (1st Cir.1994). Accordingly, the request that the decision be republished without using the names of Government lawyers, is DENIED.

### D. *Authority to Sanction Government Lawyers Personally*

 The Movants also insist that Government attorneys may not be sanctioned personally, because they are protected by the doctrine of sovereign immunity. We do not seem to be alone in our disagreement with this argument, either. "[B]ankruptcy courts have authority to exercise both civil and criminal contempt powers against recalcitrant government attorneys." *In re Graham,* 981 F.2d 1135, 1142 (10th Cir.1992). Government lawyers can be personally sanctioned pursuant to Fed.R.Civ.P. 37(b). *See, e.g., Sumitomo,* 617 F.2d 1365; *see also E.E.O.C. v. Waterfront Comm'n,* 665 F.Supp. 197, 201 (S.D.N.Y.1987) ("... government attorneys [are] on notice that they are not exempt from the federal rules and that they will be held to the highest standards of the Bar"); *United States v. Shaffer Equipment*

---

about this entirely overdone (reconsideration) proceeding is that the Government, which has gone to such unprecedented lengths to undo this Court's discovery orders, has been treated with

extreme deference *on the merits* of this very substantial litigation. At some point, one would expect the Government to recognize this.

*Co.*, 158 F.R.D. 80, 87 (S.D.W.Va.1994) ("[s]overeign immunity is not a bar to personal sanctions on government attorneys ... because these sanctions do not come from the public coffers").[12] In *Sumitomo* discussed *supra*, the sanctioned government attorney raised the defense of sovereign immunity. The Court of Appeals upheld the sanction on the ground that under (former) Rule 37(f), the government was immune from the assessment of attorney fees and expenses and therefore, "the district court's only available target for such sanctions was the government's counsel." 617 F.2d at 1371; *see also Horn*, 29 F.3d at 766 (quoting *Sumitomo* with approval).

The Fifth Circuit adopted a similar position, vis-a-vis the repeal of former Rule 37(f). "By taking away the government's protection from Rule 37 sanctions, Congress could not have been clearer in revealing its intent to subject *the government and its attorneys* to Rule 37(b)(2)(E)...." *Chilcutt v. United States*, 4 F.3d 1313, 1326 (5th Cir.1993) (emphasis added), *cert. denied, Means v. Wortham*, — U.S. —, 115 S.Ct. 460, 130 L.Ed.2d 367 (1994). The court in *Chilcutt* also made clear that government attorneys are to be treated in the same manner as private attorneys. *Id.* at 1325.

Although we are aware of no published case in the First Circuit where monetary sanctions were levied against a government lawyer in a civil case, we believe that our Court of Appeals would rule similarly if presented with the issue. In *United States v. Horn*, 29 F.3d 754, a criminal case, the First Circuit Court of Appeals explicitly detailed a number of acceptable methods of redress for government attorney misconduct, including monetary sanctions. In that case the District Court assessed costs and attorney fees *against the United States* because of prosecutorial misconduct. The Court of Appeals reversed, on sovereign immunity grounds but went on to say that:

Courts have many other weapons in their armamentarium. This case aptly illustrates the point. The district judge ordered, among other things, the removal and quarantine of the lead prosecutor, the suppression of tainted documents, and the advance disclosure of the government's trial strategy. In addition, the judge could have ordered the lead prosecutor to pay the accumulated fees, *see Chilcutt*, 4 F.3d at 1319 (upholding order that government counsel pay, *inter alia*, for the time spent by defense counsel at contempt hearing, without being reimbursed); *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370–71 (9th Cir.1980) (upholding imposition of monetary sanctions for discovery abuse against government attorney as the "only available target for such sanctions"), but did not see fit to do so. He also could have ordered the prosecutor to attend ethics seminars at her own expense, *see Chilcutt*, 4 F.3d at 1319, dispatched her to the Justice Department's internal disciplinary office, *see [U.S. v.] Hasting*, 461 U.S. at [499] 506 n. 5, 103 S.Ct. at [1974] 1979 n. 5, [76 L.Ed.2d 96] (1983), or publicly reprimand the Justice Department itself, *see United States v. Prince*, 1994 WL 99231 at *1–2, 1994 U.S.Dist. LEXIS 2962 at *1–*4 (E.D.N.Y. 1994).

*Id.* at 766–67. That *Horn* is a criminal case does not lessen its value as precedent in the instant dispute.

■■■ The Reno–Rubin separation of powers argument contains no discernible merit, and is rejected. In so holding, we again agree with the Fifth Circuit Court of Appeals, in *Chilcutt*, that if separation of powers bars the judiciary from sanctioning government attorneys personally,

> [s]uch a decision would invite members of our sister branches to ignore acceptable standards of decorum in courts and flout court orders. Indeed, to rule [in such a

---

12. Similarly, the Government's assertion of sovereign immunity here is misplaced, as the sanction in question was awarded against counsel *personally*—not against the United States. *See Sumitomo*, 617 F.2d at 1370–71. Even if the Government was the target of the sanction, however, sovereign immunity would not be a defense in this instance. The Bankruptcy Reform Act of 1994 substantially redefined and limited sovereign immunity as to at least sixty specific Code sections, and even imposed the amendment retroactively. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b)(2)(B), 108 Stat. 4106; 11 U.S.C. § 106(a)(3).

manner] ... would rob federal courts of power they inherited at their inception: power to preserve order in judicial proceedings and enforce judgments.

4 F.3d at 1327 (footnote omitted); *see also Horn*, 29 F.3d at 766–67 (neither sovereign immunity nor separation of powers is a bar to personally sanctioning a government attorney). We also conclude that the authority to personally sanction Government attorneys, implicitly and of necessity, carries with it the authority to prevent the reimbursement of sanctioned Government attorneys. If the rule were otherwise, the authority to sanction them in the first place would be meaningless, and we clearly are not prepared to accept the argument that the Government is the entity best suited to discipline its lawyers for their misconduct.

Under Rule 37(b), we conclude that the imposition of civil sanctions against Charles Cannon, Esq., *personally,* in the amount of $750 was proper and easily within the scope of this Court's discretion, given the record in this adversary proceeding. On the other hand, the Government again is correct, and we accept its argument that the part of the order requiring Mr. Cannon *to pay the sanction into the General Fund,* is improper. Accordingly, the April 14, 1995 Decision is further modified to require that the sanction in question be paid to the Plaintiff, as partial reimbursement of his costs and attorney's fees incurred in obtaining compliance with the January 14, 1992 Discovery Order.[13]

The argument that $750 is excessive deserves no comment, other than—it is rejected.

Based upon all of the foregoing, the Motion to Vacate or to Alter or Amend the Judgment is GRANTED in part, as indicated at pages 8, 9, 12, 13, and 23, and the rest of the April 14, 1995 Decision and Order remains unchanged. The argument of the Attorney General and the Secretary of the Treasury, on constitutional separation of powers grounds is REJECTED, and the

Movants' request for a "new trial" is DENIED.

Enter Judgment consistent with this opinion.

---

**13.** The Plaintiff has submitted his request for attorney fees and costs, in the amount of $98,000, incurred in obtaining compliance with the Discovery Order. The reasonableness of that request is disputed, and is being dealt with separately. The above amendment directing Mr. Cannon to pay the sanction directly to the Plaintiff, rather than into the General Fund, will merely reduce the IRS's ultimate liability to the Plaintiff by $750.