**In re 1747 WEST MAIN CORP., Debtor.**

**John BOYAJIAN, Trustee, Plaintiff,**

v.

**RHODE ISLAND PUBLIC TRANSIT AUTHORITY, Defendant.**

Bankruptcy No. 92–11916.
Adv. No. 93–1076.

United States Bankruptcy Court,
D. Rhode Island.

July 8, 1996.

---

John Boyajian, Chapter 7 Trustee, Boyajian, Harrington & Richardson, Providence, Rhode Island.

Robert Fine, Licht & Semonoff, Providence, Rhode Island, for Defendant, Rhode Island Public Transit Authority.

*DECISION FINDING RHODE ISLAND PUBLIC TRANSIT AUTHORITY IN CIVIL CONTEMPT AND ORDER IMPOSING SANCTIONS, BUT DENYING MOTION FOR ENTRY OF DEFAULT JUDGMENT*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Trustee's motion to hold Rhode Island Public Transit Authority ("RIPTA") in civil contempt, and for a default judgment on the merits pursuant to Fed.R.Civ.P. 37(b)(2)(C). Upon consideration of the arguments and the evidence presented, we find that RIPTA is clearly in contempt and that its conduct during discovery is sanctionable under Rule 37(b). However, in light of prior (unpublished) expressions of disapproval by the District Court when this Court has imposed the sanction of default judgment on the merits we will not take that action today, even though we think RIPTA deserves it in this case.

## BACKGROUND

On June 13, 1993, John Boyajian, Esq., was appointed Trustee of the Chapter 11 Debtor and on June 17, 1993, he filed this adversary proceeding, alleging that RIPTA conducted its hazardous waste disposal improperly and illegally at the Debtor's property since 1980. For those transgressions, he now seeks injunctive relief and damages caused by RIPTA's maintenance, washing,

fueling and storage activities. Early on in this lawsuit, in August 1993, the Court approved a consent order that purportedly settled the Trustee's request for injunctive relief, wherein RIPTA agreed, *inter alia*, that it

would not engage in or otherwise cause the release, discharge, disposal or improper handling of any oils, chemicals, and/or other waste materials, including but not limited to any hazardous materials at the property located at 1747 West Main Road, Middletown, Rhode Island in violation of any state and/or federal law or regulation.

*See* Consent Order at 2, Docket # 10 (August 23, 1993). In reliance on these promises, the Trustee suspended further legal action to monitor or enjoin RIPTA's operation and activities, and concentrated on the other requests for relief in his complaint.

On October 1, 1993, in preparation for trial on the damage issue, the Trustee served his first request for production and/or inspection of documents. RIPTA failed to respond, and after an overly generous waiting period, the Trustee filed a motion to compel production, which was granted on May 2, 1994. On May 10, 1994, again not hearing from the Defendant, the Trustee filed a motion for the entry of a default judgment. On May 23, 1994, RIPTA very belatedly responded to the request for production, stating under oath that "[a]lthough Defendant's files have been reviewed, the Defendant is unaware of any record or reports" that are responsive. On July 27, 1994, at a hearing on the Trustee's motion for entry of default, in further deference to RIPTA's protestations of innocence, the parties agreed that the motion would be withdrawn *if* RIPTA supplied an affidavit in support of the foregoing response. See Order dated July 27, 1994. The Defendant attached the statement of William Trevitt, RIPTA's General Manager, who under oath described RIPTA's efforts in the search, and assuring there were no documents responsive to the request. In light of this sworn repre-

sentation, and with RIPTA presumably honoring its commitment to behave itself environmentally,[1] the Trustee relaxed as to the contamination issue.

The instant motion for contempt, and the renewed motion for default were prompted by the Trustee's fortuitous discovery[2] in January 1996, of a letter dated August 23, 1993,[3] from one of RIPTA's lawyers to the Assistant Director of the Department of Environmental Management, stating in part: "As I mentioned to you, we just received this report last week in response to a request for production and there appear to be reportable, improper discharges by RIPTA and likely some historic contamination at the site." (*See* Trustee's Ex. 2). The Trustee argues that this letter constitutes an admission by RIPTA that it had been and was continuing to contaminate the property, that the letter is clearly responsive to the request for production, that it should have been produced forthwith, and that it was wrongfully withheld, and we agree entirely. By conduct disturbingly reminiscent of that of the IRS and its lawyers in *Williams v. Internal Revenue Service (In re Williams)*, 181 B.R. 1 (Bankr. D.R.I.1995), *modified*, 188 B.R. 721 (Bankr. D.R.I.1995), RIPTA's actions, viewed in their entirety, are clearly willful and designed to obstruct and impede the Trustee in the legitimate prosecution of this adversary proceeding. RIPTA has offered no reasonable or believable explanation why the letter was not produced timely and voluntarily, and we conclude that by intentionally withholding this relevant evidence, RIPTA acted in bad faith and with bureaucratic indifference while it continued to damage the subject property.

*THE CONTEMPT MOTION*

The Trustee contends that RIPTA repeatedly and continuously violated the August 1993 Consent Order by knowingly and illegally discharging hazardous waste, and by continuing to use its underground injection control system without a permit. It is also

---

1. It later became apparent that RIPTA was clandestinely buying time, while it continued to contaminate the Debtor's real estate.

2. The Trustee happened upon this letter while searching DEM records.

3. This is the same date the Consent Order was entered on the Court docket, so we cannot accept the suggestion that the letter was overlooked because it was *out of sight, out of mind.*

alleged, and we find as a fact that, because and in anticipation of its planned move to a new, state of the art facility by the summer of 1995, RIPTA did little or nothing to remediate the situation.[4] At its new location, RIPTA does not have an underground injection system, but instead uses a modern process that filters and recycles waste water.

Mr. Brown conceded that he was aware of the Consent Order in August 1993, and acknowledged that waste water leaving the facility from bus washing drained across the floors, picking up other contaminants such as diesel fuel and oil, before being discharged directly into the soil.

■ When RIPTA agreed not to "engage in or otherwise cause the release, discharge, disposal or improper handling of any oils, chemicals, and/or other waste materials," it was charged with full knowledge of all state and federal laws or regulations dealing with pollution and contamination. However, instead of trying to comply with said laws and regulations, RIPTA concentrated its efforts and resources on constructing its new facility. In planning and constructing its new location, we find that RIPTA *must* have become familiar with all applicable EPA requirements, while it continued to deny the existence of the problems at the subject property. RIPTA acknowledges (as it must) that it used the underground injection control system without a permit, but urges that it should be excused because the Department of Environmental Management "never told them that they needed a permit." This argument is ludicrous and we find, for the reasons stated above, that RIPTA knowingly and willfully violated the August 1993 Consent Order, as well as applicable DEM regulations.

■ As for whether RIPTA's conduct may be redressed by this Court, "[i]t is well-settled law that bankruptcy courts are vested with contempt power." *In re Power Recov-*

*ery Sys., Inc.,* 950 F.2d 798, 802 (1st Cir. 1991). "Consideration by a bankruptcy court of a civil contempt motion will encompass only two issues: whether the alleged contemnor knew of the order and whether he complied with it." *Kellogg v. Chester,* 71 B.R. 36, 38 (N.D.Tex.1987); *see also In re Newport Offshore, Ltd.,* 88 B.R. 566, 572 (Bankr.D.R.I. 1988).

Because of its environmentally damaging activities from the date of the Consent Order until vacating the premises in July 1995, RIPTA is ORDERED to begin immediately the process of removing and remediating all hazardous waste caused by its activities as described above.[5] We also adopt and ORDER other of the Trustee's specific recommendations, as follows:

(1) that RIPTA remove all petroleum-related contamination from the subject property, excepting only that contamination which RIPTA can specifically identify as having been caused by other parties;

(2) that the Trustee retain professional assistance, pursuant to 11 U.S.C. § 327, to oversee and be responsible for the review, monitoring and approval of RIPTA's activities in: (a) identifying contamination at the site; (b) identifying contamination caused by other parties; (c) developing a remediation plan; (d) implementing said plan; and (e) establishing and overseeing compliance with the plan;

(3) that RIPTA pay the necessary and reasonable legal, expert, and other professional fees, costs, and expenses incurred by the Trustee to date, in connection with the prosecution of this action;

(4) that RIPTA pay all future necessary and reasonable costs, expenses, and expert and professional fees attributable to the monitoring, review and approval of RIPTA's remediation activities, as ordered herein.

---

4. According to Frederick Brown, RIPTA's System General Manager of Operations, RIPTA began obtaining permits in 1992 for construction of the new facility.

5. This, of course, places the burden on RIPTA to identify that contamination for which it is not

responsible, and which may not be easy to do. But we agree with the Trustee that in light of RIPTA's flagrant misconduct herein, and because RIPTA continued to pollute the subject property for two full years *after* the Consent Order, this is an appropriate sanction, in the circumstances.

*THE REQUEST FOR ENTRY OF DE-FAULT JUDGMENT*

■ "Rule 37(b) allows the Court to sanction a party who has not complied with discovery orders in a pending action." *Williams,* 181 B.R. at 1. Rule 37(b) is made applicable in bankruptcy by Fed.R.Bankr.P. 7037, and states in pertinent part:

(b) Failure to Comply with Order.

.   .   .   .   .

(2) Sanctions by Court in Which Action is Pending. If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

.   .   .   .   .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, *or rendering a judgment by default against the disobedient party;*

Fed.R.Civ.P. 37(b) (emphasis added). While the primary motivation for the renewed motion was the Trustee's discovery of the August 23, 1993 letter referenced above (Trustee's Ex. 2), this was not RIPTA's only sin during discovery. Frederick Brown stated on cross-examination that he had personally delivered certain manifests, so called, to RIPTA's attorneys, in response to the Trustee's discovery requests—documents that *still* have not been produced. These documents allegedly contain information about hazardous spills, and RIPTA's efforts to remediate said spills, as well as waste removal records. The letter and the manifests, therefore, are clearly responsive to the request for production, both are critical to the issues in dispute, and both should have been turned over within the time allowed. The suggestion by RIPTA's attorney that "the letter must have

been misfiled," and that "he did not believe the manifests were responsive" is totally without merit, and is itself a sanctionable act. The contents of the letter and the manifests are what this lawsuit is all about.

In *Williams,* we stated that:

When contemplating sanctions under Rule 37(b), a court should consider: 1) the facts of the case; and 2) the Court's purpose in imposing the penalty.

.   .   .   .   .

'Whether deterrence or compensation is the goal, the punishment should be reasonably suited to the crime. Nevertheless, whichever purpose is to be served—and often, sanctions are designed to serve some combination of the two prime purposes— the trial court's discretion in fashioning sanctions is broad.'

*Williams,* 188 B.R. at 729 (*quoting Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 394–95 (1st Cir.), *cert. denied,* 498 U.S. 891, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990)).

■ Dismissal has been described as the "most severe in the spectrum of sanctions." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). Although on the facts before us we believe that default would be an appropriate remedy, considering the relevance and importance of the information withheld, and the lack of any reasonable explanation why the documents were not produced, we will rule conservatively and DENY, without prejudice, the Trustee's request for default judgment on the merits. Instead, as a less severe sanction under Rule 37(b), RIPTA will be prohibited from presenting a defense at trial. Additionally, because of the total absence of any evidence that RIPTA's conduct during discovery was "substantially justified," *see* Fed.R.Civ.P. 37(b)(2), RIPTA and/or its attorneys are ORDERED to pay the Trustee's reasonable legal expenses and costs for having to initiate and to litigate the May 2, 1994 Order compelling production.[6]

---

6. This sanction is ordered jointly and severally against RIPTA and its attorneys. The record does not indicate which of the two was more derelict in withholding and/or failing to produce these documents, or which was most responsible in general for the obstructionist behavior described herein. Therefore, initially at least, we leave the apportionment of this monetary sanc-

Finally, RIPTA and/or its attorneys are ORDERED to turn over to the Trustee, forthwith, copies of all manifests and any other documents not yet produced that are responsive to the October 1, 1993 Request for Production, with the clear admonition to RIPTA and its attorneys that any further shenanigans intended to obstruct discovery *will* result in the entry of a default judgment on the merits, together with the imposition of additional monetary sanctions.

tion to RIPTA and its attorneys, because they alone know where the fault lies. If counsel and client are not able to agree, a hearing will be held and the Court will determine and apportion the sanctions.