In re Lawrence G. WILLIAMS, Debtor.

Lawrence G. WILLIAMS, Plaintiff,

v.

UNITED STATES of America, Internal Revenue Service, et al., Defendants.

Bankruptcy No. 90–12125.
Adv. No. 91–1047.

United States Bankruptcy Court,
D. Rhode Island.

April 14, 1995.

Dennis L. Stein, Gerard Riso, Kurtzman, Haspel & Stein, Spring Valley, NY, Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for debtor/plaintiff.

Charles J. Cannon, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, DC, for defendants.

Sheryl Serreze, Office of U.S. Trustee, Providence, RI.

## DECISION AND ORDER CONVERTING CASE TO CHAPTER 7, AND GRANTING PARTIAL RELIEF ON DEBTOR'S REQUEST FOR SANCTIONS AGAINST THE INTERNAL REVENUE SERVICE

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on January 20, 23, and 25, 1995, on:

(1) the United States Trustee's Motion to Convert the case to one under Chapter 7; and

(2) the Debtor/Plaintiff's motion against the IRS for default judgment on the merits, or for preclusion, and for monetary sanctions pursuant to Fed.R.Civ.P. 37(b), based on the Defendant's alleged failure and/or refusal to comply with discovery orders. Because it has attracted so much of the parties' attention, and required by far the most consideration, we will first address the Plaintiff's Rule 37 motion.[1]

### I. SANCTIONS

Rule 37(b) allows the Court to sanction a party who has not complied with discovery orders in a pending action. Made applicable in adversary proceedings by Fed.R.Bankr.P. 7037, the Rule states in pertinent part:

(b) Failure to Comply with Order.

. . . . .

---

1. This opinion sets forth our findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052.

(2) Sanctions by Court in Which Action is Pending. If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

. . . . .

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b). Because of the Government's alleged failure and/or refusal to provide documents as ordered, coupled with the autocratic and unprofessional conduct of its agents throughout the discovery process, the Plaintiff would like a default judgment on the merits of his complaint against the IRS, or alternatively an order precluding, at trial, the introduction of certain evidence, and monetary sanctions. The United States denies the allegations, asserting that it has attempted "in good faith to comply with all discovery orders," and that "there is no evidence of any willful conduct or misconduct on behalf of the United States."

The IRS also notes that the Plaintiff has only recently advanced a new theory in its case, since the filing of the January 11, 1995 Tax Court decision, *Manko v. Commissioner*, 69 T.C.M. (CCH) 1636, 1995 WL 39228

(1995), and that it should not be sanctioned for failing to produce documents based on arguments not previously asserted. As to this last point, we are in full agreement, and assure the Defendant, the United States, that any effect the *Manko* decision may have on this proceeding will be no part of our consideration herein. Finally, the IRS argues (incorrectly) that it was the Plaintiff who failed to comply[2] with Fed.R.Civ.P. 26(a), which requires the production of information without a formal request. By Temporary Procedural Order dated February 8, 1994, this Court opted *not* to apply the 1993 amendments to Fed.R.Civ.P. 26 to adversary proceedings, and therefore those informal disclosure requirements are inapplicable.

In any event, based upon our consideration of the entire record, including the demeanor and credibility of the witnesses, the memoranda submitted, and the arguments of counsel, we find that throughout the long pendency of this adversary proceeding the Defendant has repeatedly and deliberately violated Rule 37(b). We also find and conclude that the IRS's failure to comply with outstanding discovery orders was not substantially justified, that there are no other circumstances that would make an award of expenses unjust, and that sanctions are definitely in order. The only real issue is the amount and/or kind of sanctions that are appropriate, on the facts before us.

Because this matter has been so vigorously contested and extensively litigated, our decision to impose sanctions calls for some elaboration. We begin with a brief chronology of the relevant events. On December 3, 1990, Lawrence Williams filed a Chapter 11 petition, and on February 21, 1991, he brought the instant adversary proceeding against the Internal Revenue Service, seeking a determination of his federal tax liability for the years 1978 through 1988, and 1990. On September 9, 1991, the IRS filed a proof of claim in excess of $6.5 million dollars for the tax years in question, challenging certain deductions taken by Williams in his various part-

---

**2.** Regarding the Defendant's finger pointing, apparently intended to deflect attention away from its own misbehavior, the Court is quite familiar with the Plaintiff's shortcomings, which are dealt with as they are presented, *see Citibank, N.A. v. Williams (In re Williams)*, 159 B.R. 648 (Bankr. D.R.I.1993), and our ruling herein on conversion, *infra* at 5–6.

nership and limited partnership interests. Williams argues that he owes substantially less than what is asserted in the IRS proof of claim, and also contends that he has *no* liability for several of the tax years in question, on the ground that the statute of limitations prohibits the collection of such taxes.

On April 30, 1991, Williams served his first request for production of documents, with a compliance deadline of May 31, 1991. The IRS did not respond, and on June 10, 1991, Williams filed a Motion to Compel Production. At this juncture, having defaulted, the IRS technically lacked standing to object to either the scope or the content of the Plaintiff's requests. *See* Fed.R.Bankr.P. 7034. Nevertheless, on June 18, 1991, the IRS filed a somewhat puzzling response to the motion, characterizing the [already granted] requests as "burdensome," but also stating that it "would produce documents relating to Lawrence Williams if they were in its possession." And then, on June 25, 1991, the IRS filed an Objection to the Motion to Compel, on the even more curious ground that it had "filed its response to the request for production on June 18, 1991." On July 18, 1991, notwithstanding that its rights on the issue had expired, and for reasons that now escape us, a hearing was held on the Motion to Compel, we heard the IRS's excuses, and granted additional time to provide the overdue documents. Nothing happened. On January 7, 1992, after even further hearing,[3] we overruled its objections and ordered the IRS to produce *all requested documents* within 45 days. (*See* Joint Exhibit 1, January 14, 1992 Order). Again, IRS did nothing, and on May 22, 1992, Williams filed the instant motion for default judgment, preclusion, and monetary sanctions.

The Plaintiff's May 22, 1992, pleading apparently did attract the Government's attention, and nine weeks later,[4] on July 30, 1992, D. Patrick Mullarkey, Esq., of the Department of Justice wrote to Plaintiff's counsel directing him to Charles J. Cannon, Esq., the IRS's designated trial attorney in this proceeding, for permission to view "ten linear feet" of documents on file at the IRS North Atlantic Region Office in New York City. (*See* IRS Exhibit 65). Stein contacted Cannon, as he was advised to do, and was told by Cannon to call William Blagg, Esq., of the Manhattan IRS District Office, to arrange to examine the files in question. Stein testified that he made repeated attempts to contact Blagg, and logged more than 100 telephone calls over the ensuing months, just to make an appointment to get to see the documents in question. Blagg did not contradict this description of events, and conceded that his relationship with Stein was unfriendly, at best.[5] Finally, nearly four months after Mr. Mullarkey's letter, Blagg agreed to permit the document examination on November 20, 1992, in Manhattan. Stein testified that when he arrived at the IRS on that date, Blagg produced an obviously incomplete amount of material for inspection, and that only after considerable arguing and a call to Charles Cannon was Stein allowed access to "an additional six linear feet of documents." Stein testified that there were no documents relating to the Arbitrage Management Project[6] in the materials produced for inspection, and that Blagg represented to him that there were no such documents. At the end

---

3. By this time it is clear that the Court itself is guilty of overindulging this Defendant.

4. It is as though the IRS never heard of response/objection deadlines, the Federal Rules of Civil Procedure, or the Rules of Bankruptcy Procedure.

5. The two attorneys were adversaries and learned to dislike each other in earlier Tax Court litigation wherein Stein represented an Arbitrage promoter, and Blagg represented the IRS.

6. The Arbitrage Management Project was established by the Tax Court in an effort to resolve the disputes of over 5,000 taxpayer litigants. As owners of limited partnership interests, the tax-

payers had claimed large losses resulting from their involvement in the Arbitrage Partnerships. The IRS questioned the partnership losses, which, in turn affected deductions taken by the taxpayers on their individual tax returns. To avoid what would have been very complex and time consuming litigation, the IRS made an offer of settlement which was accepted by virtually all of the arbitrage taxpayer litigants. A major issue in the proceeding at bench is whether Lawrence Williams accepted the offer, and if so, when. The date of the alleged settlement is important because of statute of limitations questions sought to be raised by Williams.

of the day, Stein handed Blagg a small packet of material to be copied and mailed to him. He also left with Blagg a separate list of the documents still due under his initial 1991 discovery request. (*See* IRS Exhibit 68). Ten days to two weeks is the most it should have taken to supply all of this material. In classic bureaucratic style, however, it took Blagg over three months to copy and mail the documents. (*See* Testimony of Dennis Stein and Joint Exhibit 57). Mr. Blagg explained that there was only one secretary for three attorneys in his office, and that *she* just could not attend to this particular task any sooner. In those circumstances, *if true*, Mr. Blagg should have either rolled up his sleeves and made the copies himself, or delegated the job to somebody else. We find Mr. Blagg's conduct to be intentional, unprofessional, and unjustified,[7] and his shifting the blame to his secretary is pure baloney.

Blagg's attitude problem surfaces again on January 13, 1993, in his letter to Mr. Cannon regarding the material requested by Stein at the November 20, 1992 meeting. (*See* IRS Exhibit 69). In that letter Mr. Blagg reports on the status of the search, makes his own determination that the Arbitrage Partnership documents are irrelevant to the instant litigation, and advises that in any event it may take him an *additional 120 days* to locate those documents which he deems discoverable. This Court has irreconcilable difficulty with: (1) Mr. Blagg's unilateral extension of Court imposed deadlines; (2) his decision not to produce documents, based on his personal determination that they are irrelevant; and (3) his most generous (120 day!) extension to produce documents that he considered to be discoverable. If Charles Cannon, the attorney of record in this proceeding, felt (even though out of time) that certain requests were not proper, then it was his obligation to

file a request for protective order, and a judicial determination on the issue. None of this was done. Instead, as we have seen, Cannon referred Stein to Blagg, who did his best to continue to obstruct the Plaintiff's discovery.[8]

The final straw was a letter dated January 21, 1994, from Blagg to Cannon with exhibits attached, but which were not produced until one year later, after this hearing had already begun. In the letter, Mr. Blagg states:

> As requested, we are enclosing copies of documents referred to in connection with a motion to preclude filed by the debtor in the above captioned case. The documents relate to the negotiation of a settlement for cases in the "Arbitrage Management" litigation project and are part of the record in certain Tax Court cases involving Arbitrage promoters.

(IRS Exhibit 75). Stein testified that although he had not previously seen Blagg's letter, the documents were responsive to the request he made of Mr. Blagg in November 1992. He also testified that this was the same material used by the IRS in the *Manko* case, at the same time the existence of these documents was being denied by the IRS in this proceeding. (*See* Joint Exhibit 54). The evidence in *Manko* was concluded on January 18, 1994, three days before Blagg's letter to Cannon. We have heard no acceptable reason[9] why these documents were not produced pursuant to Stein's April 30, 1991 Request for Production, or our Order compelling production prior to January 23, 1995.

Throughout this litigation, the evidence of the Defendant's willfulness is as plain as it can be, and "[t]he day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expedi-

---

7. The Defendant was required by an Order dated January 14, 1992, to produce *within 45 days* all of the documents requested by the Plaintiff. No motion for protective order or request for extension of that deadline were ever filed, however.

8. The most charitable (although still unacceptable) light in which to view Mr. Blagg's actions was his concern that information given to Stein in this proceeding might be used in cases pending before the Tax Court, where discovery, we

are told, is much more limited than in the Bankruptcy Court. That concern should have been raised here but the Defendant chose, instead, to simply ignore this Court's outstanding and overdue discovery orders.

9. That "he [Charles Cannon] did not realize that he had these documents" until January 19, 1995, is clearly not acceptable. *See* Debtor's Exhibit 70; Transcript January 23, 1995, at 66–72.

tiously if trials are to be held at all." *Damiani v. Rhode Island Hospital,* 704 F.2d 12, 16 (1st Cir.1983); *see also DeConcilis v. Crawley (In re DeConcilis),* 119 B.R. 880 (Bankr.D.R.I.1990).

The Internal Revenue Service is not excepted from any of the requirements or standards that are applicable herein. In addition, we find that its actions were specifically calculated to impede Plaintiff's attempts to obtain discovery material to which it was clearly entitled. Mr. Cannon's repeated assurances that he "would provide the Plaintiff with whatever information he received," are meaningless, and Exhibit 75 is a good illustration of his disdain for the Federal and Bankruptcy Rules of Procedure, his adversaries, and Courts alike. That Attorney Cannon waited over one year to forward to the Plaintiff documents that were continuously in his possession, places his performance and credibility at about the same level as that of his colleague, William Blagg, even though his manner may not be as abrasive.

For the foregoing reasons, the Plaintiff's Motion for Sanctions is GRANTED, but the Motion to Preclude is DENIED, WITHOUT PREJUDICE, as is the Plaintiff's Request for Default Judgment on the merits.[10] *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). Accordingly, the IRS is ordered to pay the Plaintiff his reasonable attorney fees and expenses incurred in forcing compliance with this Court's discovery orders. Mr. Stein has thirty days to submit his bill and supporting time records to the IRS for payment. As guidance to out of town counsel regarding fee application standards in this jurisdiction, *see In re Almacs, Inc.,* 178 B.R. 598 (Bankr. D.R.I.1995). If the parties are unable to agree on the amount of reasonable compensation and/or expenses, the Court will intervene.

In addition, to discourage these and other government agents from engaging in "big brother" abuses of private sector litigants similar to those described above, (*see Hill v. United States (In re Hill),* 71 B.R. 517 (Bankr.D.Colo.1987)), Messrs. Blagg and Cannon are each ordered to pay $750 to the Clerk of the Bankruptcy Court, for deposit into the General Fund. These additional sanctions are directed personally against the attorneys, and are not to be just passed on to the American taxpayers. Therefore, Mr. Blagg and Mr. Cannon are ORDERED to pay said sanctions from their own funds, and they are directed *not* to apply to their employer for reimbursement.

The Defendant is also ORDERED to deliver to the Plaintiff, forthwith, all documents still due under the Plaintiff's first Request for Production, and should include all memoranda of telephone conversations which Mr. Blagg has confirmed are in the IRS files, as well as all internal memoranda similar to IRS Exhibit 73. Finally, documents allegedly protected by the attorney-client privilege, work product, etc., should be delivered to the Court for *in camera* inspection, with the Government's request and reasons for relief regarding any claimed privilege, i.e., we are *not* leaving the determination of privilege with the IRS.

In light of the recent *Manko* decision, discovery is reopened for both parties for an additional sixty days. The Joint Pretrial Order is due on July 31, 1995, and trial on the merits is scheduled for August 14, 1995.

## II. *THE MOTION TO CONVERT*

■ The United States Trustee's main contention is that the Debtor has never filed a plan and disclosure statement in this aging Chapter 11 case. The Debtor responds that it is impossible for him to make any meaningful offer to creditors until his tax liability is established,[11] and that only if this adver-

---

10. Notwithstanding the egregious conduct of the Defendant's agents, we are reluctant to enter an order that would automatically have such a substantial impact on the United States Treasury, solely because of government lawyer misbehavior. Rather, it is this Court's intention to have the Plaintiff's tax liability decided on the merits, if at all possible.

11. Based upon the travel and prior proceedings in this bankruptcy case, it was our belief, early on, that the Debtor did not timely file a plan and disclosure statement because of the pending appeal of our Decision, *Citibank, N.A. v. Williams (In re Williams),* 159 B.R. 648 (Bankr.D.R.I. 1993), wherein we: (1) avoided transfers of personal property to Debtor's former wife, as fraud-

sary proceeding is *successfully* concluded, will he be able to file a plan and disclosure statement.

The case is now over five years old. In a reorganization, when faced with disputed or unliquidated debt, the debtor in possession, *sooner or later*, is required to propose a plan in light of its current circumstances. In this case, the Debtor concedes that the worst possible scenario (judgment for the full amount of the IRS claim) would render *any* plan unworkable. Considering the passage of time (5 years), the limited nature of the Debtor's present options, and the continued pendency of the Citibank appeal before the District Court, we agree with and adopt the argument of the United States Trustee and conclude that cause has been shown for conversion. Any other decision would permit this (and most other "success on appeal" dependent Chapter 11 cases) to remain motionless and without time limitation in the Bankruptcy Court, while issues are litigated and appeals exhausted in other courts. We think that was never the intent of the Code drafters, or of their finished product. *See In re Mother Hubbard, Inc.*, 152 B.R. 189, 195 (Bankr.W.D.Mich.1993) (discussing the two purposes behind the 120–day exclusivity period under 11 U.S.C. § 1121: (1) "it allows the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan;" and (2) "it ensures creditors will not endure unreasonable delay after a debtor files chapter 11"); *In re River Bend–Oxford Assocs.*, 114 B.R. 111, 114 (Bankr.D.Md.1990) (Section 1121 "furthers the purpose of a rehabilitation, while recognizing that Chapter 11 is not a mechanism through which a debtor may operate indefinitely without attempting to reorganize").

In the event that the Debtor's substantive tax and/or dischargeability issues are finally resolved in his favor, and if it then appears that a reorganization would benefit Mr. Williams *and* his creditors, the Chapter 7 Trustee or the Debtor may file a motion to re-convert to Chapter 11. In the meantime,

the reasonable window of opportunity for Mr. Williams to file his plan and disclosure statement in this case has long since expired.

Enter separate Judgments, consistent with this opinion.

---

ulent conveyances; (2) determined that the debt owed to Citibank was nondischargeable; and (3) denied the Debtor's discharge. We now understand the position of Debtor to be that it is his tax problems that are holding things up. We note a pattern here, in that Mr. Williams' dischargeability problems and his tax exposure are being played, conveniently, one against the other, with transparent predictability.