USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2437
 IN RE: LAWRENCE G. WILLIAMS,
 Debtor.
 _______________

 LAWRENCE G. WILLIAMS,
 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,
 Defendant, Appellee.
 ______________

 WILLIAM L. BLAGG,
 Appellant.
 _______________

No. 97-2438

 IN RE: LAWRENCE G. WILLIAMS,
 Debtor.
 ________________

 LAWRENCE G. WILLIAMS,
 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,
 Defendant, Appellee.
 _______________

 CHARLES J. CANNON,
 Appellant.

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Mary M. Lisi, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 
 Rosenn* and Campbell, Senior Circuit Judges.
 
 

 Robert B. Mann, with whom Mann & Mitchell was on brief, for
appellant Blagg.
 Carter G. Phillips, with whom Nathan A. Forrester and Sidley
& Austin were on brief, for appellant Cannon.
 Michael J. Tuteur and Epstein Becker & Green, P.C. on brief
for National Association of Assistant United States Attorneys,
amicus curiae.
 Donald B. Verrilli, Jr. and Jenner & Block on brief for
Federal Bar Association, amicus curiae.
 Loretta C. Argrett, Assistant Attorney General, Gilbert S.
Rothenberg and Thomas J. Clark, Attorneys, Tax Division, Department
of Justice, on brief for the United States, amicus curiae.

September 11, 1998

 
 

___________
*Of the Third Circuit, sitting by designation. SELYA, Circuit Judge. This case presents a question of
first impression in this circuit: Are a trial court's published
findings of attorney misconduct, originally rendered in support of
monetary sanctions, independently appealable, notwithstanding that
the monetary sanctions imposed by the court for that conduct have
been nullified? Our sister circuits are divided on this important
question. Compare Bolte v. Home Ins. Co., 744 F.2d 572, 572-73
(7th Cir. 1984), with Walker v. City of Mesquite, Tex., 129 F.3d
831, 832-33 (5th Cir. 1997). We conclude that the court's
findings, simpliciter, are not appealable. Hence, we dismiss the
instant appeals for want of appellate jurisdiction.
I. BACKGROUND
 In 1990, Lawrence G. Williams filed a voluntary petition
in bankruptcy. During the bankruptcy proceeding, the United States
filed proofs of claim seeking roughly $6,500,000 in unpaid federal
taxes (resulting primarily from the disallowance of deductions
claimed by the debtor). Williams responded that an offer of
settlement made by the Internal Revenue Service (IRS) and accepted
by him in 1989 substantially reduced his tax liability from the
amount stated in the proofs of claim. As Williams described it,
the settlement proposal was coincident with the resolution of Tax
Court proceedings involving the Arbitrage Management Partnerships
(the partnerships), a group of tax shelters in which he had
invested.
 To test the parties' competing positions, and to fix the
amount and dischargeability of his outstanding federal income tax
liability, Williams filed an adversary action against the United
States within the bankruptcy proceeding. Following the initiation
of this action, the parties undertook discovery. At about this
time, Charles J. Cannon, an attorney in the Tax Division of the
United States Department of Justice, entered his appearance on
behalf of the United States. On April 30, 1991, Williams served a
formal demand for production of documents. The United States had
thirty days to respond to this demand, see Fed. R. Civ. P. 34(b),
but failed to take timely action. On June 10, Williams moved to
compel production. At that point, the government produced some
documents and objected to the production of others. The bankruptcy
court (Votolato, J.) convened a hearing on the motion to compel,
overruled the government's objections, and ordered it to produce
the remainder of the disputed documents within forty-five days.
 The government produced some, but not all, of the
specified documents within the allotted time. In April 1992, the
debtor filed a motion for partial summary judgment claiming that,
for several of the relevant tax years, the government had not
produced documents relating to either (1) extensions of the statute
of limitations, or (2) the partnerships' tax audits. The
bankruptcy court denied the motion.
 The debtor then moved, on much the same grounds, to
preclude the government from introducing certain documents at
trial. See Fed. R. Civ. P. 37(b)(2)(B). In its response, the
government argued that it had provided all documents in its
possession relating to the statute of limitations. The government
admitted that it had not produced the partnerships' audit files,
but maintained that the debtor had never formally requested them. 
Because the parties were trying to settle the adversary action, the
bankruptcy court did not schedule a hearing on the preclusion
motion until January 1995. At that session, the court heard
considerable evidence (much of it conflicting), entertained oral
argument, and reserved decision.
 In an opinion dated April 14, 1995, the bankruptcy court
denied the preclusion motion, but imposed Rule 37(b) sanctions on
the government, Cannon, and William L. Blagg (an IRS attorney who
had assisted Cannon in endeavoring to respond to Williams's
discovery requests) for failing timely to produce the partnerships'
audit files and certain other documents. See In re Williams, 181
B.R. 1, 5 (Bankr. D.R.I. 1995) (Williams I). In the course of this
opinion, Judge Votolato harshly criticized Blagg and Cannon,
characterizing their conduct as obstructionist and unjustified. 
Among other things, he referred to Blagg's testimony as "pure
baloney," id. at 4, and ranked Cannon's "performance and
credibility at about the same level as [Blagg's]," id. at 5. As a
sanction, the judge ordered Blagg and Cannon each to pay $750 (and
not to seek indemnity from their employer), and ordered the
government to reimburse Williams for attorneys' fees incurred in
obtaining the documents. See id.
 Blagg, Cannon, and the government moved for
reconsideration. Judge Votolato issued another opinion on October
24, 1995, in which he vacated the monetary sanction against Blagg,
but refused to vacate either the sanction imposed on Cannon or his
findings with respect to the lawyers' conduct. See In re Williams,
188 B.R. 721, 725-28 (Bankr. D. R.I. 1995) (Williams II). He did,
however, order that Cannon pay the sanction amount ($750) to the
debtor as a reimbursed expense, rather than to the registry of the
court. See id. at 731.
 Blagg, Cannon, and the government appealed to the United
States District Court for the District of Rhode Island. The
district court (Lisi, J.) agreed that Blagg and Cannon had
conducted themselves improperly, but found for technical reasons
that sanctions could not be imposed under Rule 37(b)(2). In re
Williams, 215 B.R. 289, 301-02 (D.R.I. 1997) (Williams III). The
district court therefore annulled the monetary sanction against
Cannon. See id. at 302. The district court nonetheless refused to
vacate the bankruptcy court's factual findings, i.e., criticisms of
the attorneys made in the course of its opinion. See id. at 303. 
These appeals ensued. In them, Blagg and Cannon seek vacation of
the bankruptcy court's findings nothing more.
II. ANALYSIS
 The threshold question in this matter is whether the
bankruptcy judge's published findings of fact, attributing
misconduct to Blagg and Cannon, are appealable. The answer depends
on whether the findings, simpliciter, comprise a decision, order,
judgment, or decree. See 28 U.S.C. 158(d) (1994) (conferring
appellate jurisdiction over "all final decisions, judgments,
orders, and decrees" rendered by a district court on appeal from a
bankruptcy court); id. 1291 (1994) (granting jurisdiction over
"appeals form all final decisions of the district courts"). We
conclude that they do not, and therefore dismiss the attorneys'
appeals.
 At the outset, it bears reemphasis that, while the
bankruptcy court's opinions, including its criticism of the
attorneys, remain intact, there are no longer any monetary
sanctions extant in this case. The bankruptcy court itself vacated
the monetary sanction imposed on Blagg, see Williams II, 188 B.R.
at 728, and the district court annulled the monetary sanction
levied against Cannon, see Williams III, 215 B.R. at 302. The
instant appeals thus hinge on the legal significance of the
bankruptcy court's published findings of fact. In the district
court, Blagg and Cannon argued, inter alia, that these findings in
themselves operated as a sanction (particularly since the
bankruptcy judge memorialized them in published opinions). The
appellants therefore requested that the findings be stricken, both
because they received insufficient process and because their
conduct was not sanctionable. Judge Lisi assumed arguendo that the
findings operated as a sanction, but found neither a procedural nor
a substantive defect. See Williams III, 215 B.R. at 303. She
harbored "no qualms" about the bankruptcy court's findings, having
satisfied herself that they were supported by the record. Id. 
Before us, the appellants purport to appeal these linguistic
"sanctions" on much the same bases that they advanced below and ask
that we vacate the relevant findings of both lower courts.
 Imposing sanctions against counsel is a serious matter. 
Hence, when a federal court deems such a course appropriate, it
must make specific findings in support of its order. See, e.g.,
Navarro-Ayala v. Nunez, 968 F.2d 1421, 1427 n.5 (1st Cir. 1992);
Foster v. Mydas Assocs., 943 F.2d 139, 142-43 (1st Cir. 1991). 
Such findings serve a variety of salutary purposes; among other
things, they enable a reviewing court to determine whether the
sanctions imposed have sufficient grounding in law and in fact. 
See Foster, 943 F.2d at 141-42. In this case, the bankruptcy
court's findings were both explicit and unflattering, and the
appellants understandably take issue with the court's depiction of
their conduct.
 Still, it is an abecedarian rule that federal appellate
courts review decisions, judgments, orders, and decrees not
opinions, factual findings, reasoning, or explanations. SeeNavieros Inter-Americanos, S.A. v. M/V Vasilia Express, 120 F.3d
304, 316 (1st Cir. 1997); Sun-Tek Indus. v. Kennedy Sky Lites,
Inc., 856 F.2d 173, 176 (Fed. Cir. 1988); Bolte, 744 F.2d at 573;
W.W. Windle Co. v. Commissioner, 550 F.2d 43, 45-46 (1st Cir.
1977). Blagg and Cannon attempt to evade this rule by artful
characterization. The imposition of a sanction on an attorney is
universally regarded as an order, and, if an appellate tribunal has
jurisdiction to review such an order, its examination will
encompass the underlying findings. See, e.g., Whitney Bros. Co. v.
Sprafkin, 60 F.3d 8, 11-12 (1st Cir. 1995). Invoking this truism,
Blagg and Cannon posit that the bankruptcy court's harshly worded
findings are tantamount to a sanction in the form of a public
reprimand and, therefore, ground appellate jurisdiction. We do not
agree.
 Although the appellants regard the findings as injurious
to their professional reputations, their earlier success has
compromised their ability to press the point. The bankruptcy court
chose to impose monetary sanctions, not a reprimand, in response to
the perceived misconduct. See Williams I, 181 B.R. at 5. These
sanctions have now been ameliorated. See Williams II, 188 B.R. at
728 (withdrawing monetary sanction previously levied against
Blagg); Williams III, 215 B.R. at 302 (vacating monetary sanction
levied against Cannon). Because no sanction remains, we lack
jurisdiction to consider the propriety of the offending findings. 
See Sun-Tek Indus., 856 F.2d at 176 (explaining that, although
appellate courts may scrutinize findings in tandem with the review
of judgments, they "do not review findings independently"); W.W.
Windle Co., 550 F.2d at 45 (emphasizing that appellate jurisdiction
over Tax Court decisions does not permit review of "findings and
rulings . . . apart from their effect upon the decision").
 The appellants derive no succor from their victories. 
They insist that the bankruptcy court's findings besmirch their
professional reputations to such an extent that they operate as a
de facto sanction. The lower courts could have vacated the
challenged findings coincident to granting relief from the monetary
sanctions themselves, but neither tribunal exhibited an inclination
to do so. For our part, we are not unsympathetic to the
appellants' plaint. It is trite, but true, that a lawyer's
professional reputation is his stock in trade, and blemishes may
prove harmful in a myriad of ways. Yet not every criticism by a
judge that offends a lawyer's sensibilities is a sanction. Read in
context, the bankruptcy court's descriptions of the attorneys'
behavior in this case plainly were not the sanction itself, but,
rather, served to justify the imposition of monetary sanctions. 
See Williams I, 181 B.R. at 5. Nowhere in his rescript does Judge
Votolato issue an express reprimand or otherwise intimate that a
tongue-lashing comprises any part of the designated penalty.
 Blagg and Cannon offer a contrary characterization of
Judge Votolato's opinion. They and the amici seize upon the
unarguable fact that reprimands are included in the armamentarium
of sanctions from which a judge may select if he or she purposes to
punish attorney misconduct. See Bank of Nova Scotia v. United
States, 487 U.S. 250, 263 (1988); United States v. Horn, 29 F.3d
754, 766-67 (1st Cir. 1994); see also Gregory P. Joseph, Sanctions: 
The Federal Law of Litigation Abuse 259, 496, 539 (2d ed. 1994). 
Building on this foundation, they argue that, even if a judge does
not designate his comments as a formal reprimand, harsh words that
reflect adversely on a lawyer's professionalism always should be
treated as a reprimand (and, therefore, as a sanction). This
argument invites us to draw a line between routine judicial
commentary on a lawyer's performance (presumably non-appealable)
and commentary that is inordinately injurious to the lawyer's
reputation (presumably appealable). We decline this invitation on
multiple grounds.
 Practically speaking, any rule that purports to transform
harsh judicial words into a "de facto sanction" will be almost
impossible to cabin. After all, attempting to distinguish
"ordinary" findings from "extraordinary" ones by differentiating
between degrees of abrasiveness can only proceed on an ad hoc
basis. We are unable to formulate a test and the appellants have
offered none that would provide any meaningful guidance to the
lower courts and the bar as to when commentary crosses the line and
becomes a sanction.
 This same vice characterizes the approach taken by our
dissenting colleague. Judge Rosenn seemingly focuses on discerned
intent. See, e.g., post at 28 (suggesting that findings,
simpliciter, are an appealable sanction as long as they are
"specifically intended as punishment for misconduct"); id. at 34
(suggesting that findings, simpliciter, are not an appealable
sanction as long as "they are not intended to punish or deter"). 
But a rule that routinely puts a judge's subjective intent in issue
is fraught with peril. Lawyers especially lawyers who have been
roundly criticized almost always will suspect the worst. We fear
that permitting anything less than a formal reprimand to form the
predicate for an appeal will be an invitation to litigation (and
considerable wheel spinning) over what may be challenged and what
not.
 Equally as important, if injury to reputation is the
guiding precept, as the appellants and the amici suggest, there is
no principled basis for distinguishing between a chastised attorney
and any other participant in the judicial process who becomes the
target of the presiding judge's opprobrium. As Judge Posner
astutely noted, under such a regime, "[l]awyers, witnesses,
victorious parties, victims, bystanders all who might be subject
to critical comments by a district judge could appeal their
slight if they could show it might lead to a tangible consequence
such as a loss of income." Bolte, 744 F.2d at 573. Thus,
accepting a de facto sanction theory like that advanced by the
appellants and the amici would presage "a breathtaking expansion in
appellate jurisdiction." Id.
 Another practical problem arises from the reality that
appeals from findings often will be unopposed. After all, the
parties to a case usually are interested in the decision, order,
judgment, or decree, and not in the findings (except to the extent
that they relate to the decision, order, judgment, or decree). So
it is here: the debtor, understandably, has not seen fit to spend
time and money on an issue that has no bottom-line implications for
him. This means, of course, that a reviewing court will hear only
one side of the story, and will be deprived of the balanced
adversarial presentation that is so helpful to the proper
functioning of the appellate process.
 The policy implications of the appellants' argument also
militate against its adoption. The net result would be tantamount
to declaring open season on trial judges. If chastened attorneys
can enlist appellate courts to act as some sort of civility police
charged with enforcing an inherently undefinable standard of what
constitutes appropriate judicial comment on attorney performance,
trial judges are more likely to refrain from speaking and writing
candidly. In our view, this chilling effect carries with it risks
that are far greater than those associated with the evil of
occasional overheated judicial commentary. Judicial candor is a
trait strongly valued, both generally and in the sanctions context,
and discouraging it will serve only to erode public confidence in
the courts. See Bruce M. Selya, The Confidence Game: Public
Perceptions of the Judiciary, 30 New Eng. L. Rev. 909, 915 (1996). 
Indeed, the well-entrenched doctrine of absolute judicial immunity
from liability for defamation is rooted in concerns about
preserving judicial independence, effectiveness, and frankness. 
See, e.g., Pierson v. Ray, 386 U.S. 547, 553-54 (1967); Bradley v.
Fisher, 80 U.S. (13 Wall.) 335, 347 (1871). Those same concerns
are very much in play here. Cf. Blondin v. Winner, 822 F.2d 969,
974-75 (10th Cir. 1987) (rejecting an aggrieved attorney's petition
for mandamus seeking to strike allegedly defamatory comments issued
by a district judge and suggesting potential First Amendment
implications of granting the petition).
 These considerations of practice and policy conduce to
the conclusion that a jurist's derogatory comments about a lawyer's
conduct, without more, do not constitute a sanction. A trial judge
has the obligation to assure the proper conduct of proceedings in
his or her court, see Quercia v. United States, 289 U.S. 466, 469
(1933); United States v. Polito, 856 F.2d 414, 418 (1st Cir. 1988),
and must retain the power to comment, sternly when necessary, on a
lawyer's performance without wondering whether those comments will
provoke an appeal.
 Bearing the burden of a judge's unflattering remarks
traditionally has been among the rigors associated with trial
practice. While unfairness can and does occur, we fear that the
appellants' proposed cure would be more debilitating than the
disease, in that it would, over time, reduce the judge to a kind of
trial examiner, perceived as such by those practicing before him. 
We recognize that the best judges, like the best teachers, often
exert control with perfect courtesy; but, even so, the sense of
power held in reserve can be essential. Once we remove a judge's
power, it can never be restored. We cannot expect judges to
preside effectively over discovery and trials, and yet routinely
subject them to appeals from critical comments reflecting their
displeasure with the conduct of those they are charged with
controlling.
 Let us be perfectly clear. Sanctions are not limited to
monetary imposts. Words alone may suffice if they are expressly
identified as a reprimand. See, e.g., Dawson v. United States, 68
F.3d 886, 894 (5th Cir. 1995) (reviewing an order expressly
imposing a reprimand and requiring the attorney to attend an ethics
course). But see Clark Equip. Co. v. Lift Parts Mfg. Co., 972 F.2d
817, 820 (7th Cir. 1992) ("[W]e have already decided that an
attorney may not appeal from an order that finds misconduct but
does not result in monetary liability, despite the potential
reputational effects."). But critical comments made in the course
of a trial court's wonted functions say, factfinding or opinion
writing do not constitute a sanction and provide no independent
basis for an appeal.
 Our holding does not leave a chastised attorney
remediless. A lawyer is free to petition for a writ of mandamus,
see 28 U.S.C. 1651 (1994), and request that offending commentary
be expunged from the public record. See, e.g., Bolte, 744 F.2d at
573; cf. Fromson v. Citiplate, Inc., 886 F.2d 1300, 1304 (Fed. Cir.
1989) (observing that mandamus is a more appropriate means of
deleting derogatory comments from a district court opinion, but
interpreting Second Circuit law as implicitly permitting an
appeal); Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1188 n.11,
1190-94 (8th Cir. 1984) (employing mandamus to strike a trial
judge's withering, and unjustified, condemnation of identified
corporate officers from the public record).
 Our dissenting colleague attempts to minimize the utility
of this remedy by noting that a court should not resort to mandamus
"when it can exercise the same review by a contemporaneous ordinary
appeal." Post at 36 (quoting Moses H. Cone Mem'l Hosp. v. Mercury
Constr. Corp., 460 U.S. 1, 8 n.6 (1983)). That, however, is
precisely the point. In this type of situation, in which the
ostensibly aggrieved lawyer seeks to challenge findings rather than
the trial court's decision, judgment, order, or decree, no
contemporaneous appeal lies. Mandamus, therefore, is available to
correct unwarranted judicial excesses of this nature. We caution,
however, that mandamus must be employed sparingly. In line with
the writ's accustomed uses, it should be reserved for "those rare
cases in which the issuance (or nonissuance) of an order presents
a question anent the limits of judicial power, poses some special
risk of irreparable harm to the appellant, and is palpably
erroneous." Horn, 29 F.3d at 769; accord Blondin, 822 F.2d at 973-
74 (noting that mandamus relief is available to an attorney who
wishes to expunge portions of a published opinion only where the
"right to relief is clear and indisputable").
 We doubt that mandamus is proper here, but the question
need not detain us. The appellants requested mandamus relief in
the district court but never renewed that entreaty in this venue. 
Therefore, we deem the point waived.
III. CONCLUSION
 We need go no further. While the bankruptcy court's
criticism of the appellants in its two published opinions strikes
us as unnecessarily strident, findings alone are not appealable. 
Thus, we dismiss the appeals for want of appellate jurisdiction. 
We add only a brief coda: if anything about this case is clear, it
is that emotions have run particularly high throughout the course
of litigation. Maintaining control over such charged proceedings
is tough sledding, and trial judges must be granted "some margin of
humanity" in performing that arduous task. Polito, 856 F.2d at
418.

Appeals dismissed.

 Dissenting Opinion Follows ROSENN, Circuit Judge, dissenting.

 Because the substance of the published reprimand and the
circumstances attending its declaration by the court give it all of
the characteristics of an order imposing a sanction, I would allow
the appeal. I therefore respectfully dissent.
 I.
 In order to understand that the published chastisement
and censure of government counsel was substantially more than an
ordinary finding of fact, some additional background may be
helpful. Lawrence G. Williams filed a complaint in 1991 in an
adversary action against the United States in a bankruptcy
proceeding he had initiated the preceding year. The purpose of the
complaint, among other things, was to determine the amount and
dischargeability of his outstanding federal income tax liability. 
Beginning in the late 1970s, Williams invested in a group of tax
shelters known as the Arbitrage Management Partnerships ("the
partnerships"). Williams made numerous deductions on his federal
income tax returns related to his investments in these
partnerships. The partnerships ultimately failed. During the
bankruptcy proceeding, the United States filed proofs of claim
ultimately seeking $6.5 million in unpaid federal taxes which
resulted from the disallowance of many of the deductions claimed by
Williams. 
 Subsequent to the partnerships' failure, the Internal
Revenue Service (IRS) sought to audit the partnerships and the
partnerships' individual investors. Because of the thousands of
individuals and entities involved in the partnerships, a lawsuit
was filed and the United States Tax Court supervised an attempt to
resolve all of the tax deficiencies on a consolidated basis. The
court subsequently was advised that a tentative settlement had been
reached. In February 1989, the IRS wrote Williams advising him of
the terms of the proposed settlement and of the procedures he had
to follow if he wished to accept it. In the instant adversary
action in the bankruptcy court, Williams claimed that he had
accepted the IRS's offer of settlement. He argued that, because of
his acceptance of the offer, his tax liability was substantially
reduced from the amount claimed by the United States in its proofs
of claim.
 Following the filing of the adversary action, the
Government and Williams engaged in discovery. Pursuant to Federal
Rule of Civil Procedure 34(a), Williams served a formal request for
production of numerous documents on the United States for the
period commencing 1978 to the date of his request. On April 10,
1992, Williams filed a motion for partial summary judgment
asserting that the United States had not only failed to produce all
of the documents relating to the extension of the statute of
limitations, but also failed to produce files and documents
relating to the IRS audits of the partnerships ("the partnership
audit files"). The bankruptcy court denied the motion. 
 Based on the same grounds, pursuant to Federal Rule of
Civil Procedure 37(b)(2), Williams moved to preclude the
Government from introducing certain documents at trial. In its
response, the United States argued that it had provided all of the
documents in its possession relating to the statute of limitations
and did not produce the partnership audit files because Williams
had never formally requested them. Subsequently, the parties
informed the bankruptcy court that they would attempt to reach a
settlement in the adversary action. Accordingly, the court did not
schedule a hearing on Williams's preclusion motion until January
1995, after the talks apparently broke down.
 II.
 Significantly, for the purpose of the matter presently
before us on this appeal, the proposed prehearing orders submitted
to the Bankruptcy Court by both Williams and the Government
identified the ultimate issue as 
 [w]hether the appropriate sanction [to] be
 imposed against the Government under the
 circumstances, should be the striking of the
 Government's pleadings and the entry of
 judgment [by default] in favor of the
 plaintiff and against the Government, or some
 other sanction pursuant to Rule 37(b) of the
 Federal Rules of Civil Procedure.
 Williams did not request any sanctions against either
Cannon or Blagg personally. Thus, a major purpose of the hearing
was the imposition of sanctions. Indeed, the Bankruptcy Court, in
its published opinion following the hearing, identified its
decision in part, as "GRANTING PARTIAL RELIEF ON DEBTOR'S REQUEST
FOR SANCTIONS AGAINST THE INTERNAL REVENUE SERVICE." (Upper case in
original). The court denied Williams' motion for preclusion but
sanctioned the Government, Cannon, and Blagg pursuant to Rule 37(b)
for failure to produce the partnership audit files and the
settlement payments. The court made numerous anecdotal findings of
fact in support of the sanctions and also made the following
specific findings:
 1) We find that throughout the long pendency
 of this adversary proceeding the Defendant
 [the Government] has repeatedly and
 deliberately violated Rule 37(b).

 2) We also find and conclude that the IRS's
 failure to comply with outstanding discovery
 orders was not substantially justified; that
 there are no other circumstances that would
 make an award of expenses unjust, and that
 sanctions are definitely in order. The only
 real issue is the amount and/or kind of
 sanctions that are appropriate, on the facts
 before us. (emphasis added)

 3) In addition, we find that its actions were
 specifically calculated to impede Plaintiff's
 attempts to obtain discovery material to which
 it was clearly entitled.

See In re Williams, 181 B.R. 1 (Bankr. D.R.I.), vacated in part onreconsideration, 188 B.R. 721 (Bankr. D.R.I. 1995), aff'd in partand vacated in part, 215 B.R. 289 (D.R.I. 1997). As to Blagg, the
court made the following statement: "We find Mr. Blagg's conduct to
be intentional, unprofessional, and unjustified" and it referred to
certain of his testimony as "pure baloney." 181 B.R. at 3. It
also declared Cannon's "performance and credibility at about the
same level as [Blagg]." The court also ordered Cannon and Blagg
each to pay $750 fines to the court.
 Following a motion of the Government for reconsideration
or amendment of the opinion of April 14, 1995, the bankruptcy
court, in an opinion dated October 24, 1995, agreed that several
corrections and amendments to its original opinion were in order,
including vacating the monetary sanction against Blagg, recognizing
that he "did not file a formal entry of appearance." The court,
however, refused to vacate published statements as to Blagg and
Cannon. See In re Williams, 188 B.R. 721.
 Blagg, Cannon, and the Government appealed to the United
States District Court for the District of Rhode Island. At the
time of the appeal, the bankruptcy court's order was not final
within the meaning of 28 U.S.C. 158(a)(1) because of the pending
underlying adversary action. The district court, however, allowed
the appeal pursuant to 28 U.S.C. 158(a)(3), which permits the
appeal of interlocutory orders with court permission. See In re
Williams, 215 B.R. at 297. The district court agreed that Cannon
and Blagg had conducted themselves improperly, but found that they
had not violated Rule 37(b) or any other rule because Williams had
never formally requested either the partnership audit files or the
settlement documents. See 215 B.R. at 301-02. The district court,
therefore, vacated the monetary sanction against Cannon, but
refused to vacate the bankruptcy court's published reprimand of
counsel. Citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-
66 (1980), the court ruled that the public reprimand was not
erroneous under the federal courts' "inherent power" to sanction
misbehaving attorneys. See 215 B.R. at 303.
I II.
 The majority dismiss the appeal before us for want of
jurisdiction on grounds that the published chastisement of counsel
was not contained in an order, judgment, or decree of the court,
but amounted only to findings of fact in support of the monetary
fines imposed. However, the monetary sanctions against Blagg
subsequently were vacated by the bankruptcy court and the findings
of fact in support of them served no purpose except to humiliate
and punish him. Thus, the chastisement had a vitality and purpose
of its own, separate and independent of the monetary sanctions.
Similarly, as to Cannon, when the United States District Court
ruled that Cannon and Blagg "did not, in fact, violate an order of
the district court," 215 B.R. at 303, it vacated the fine as to
Cannon but not the reprimand as to him or as to Blagg. The
district court then gave the reprimands an independent status and
importance much more significant than an ordinary finding of fact
in support of the fines. It regarded the offensive statements as
sanctions. Id.
 Although the essence of the bankruptcy court's reprimand
to counsel is couched as a finding, it is much more than a basic
finding of fact in support of sanctions. The factual findings
supporting the sanctions are stated elsewhere in the opinion and
specifically refer to counsel's alleged shortcomings and
dereliction with respect to the production of documents and Blagg's
failure to respond to telephone calls. Although the court did not
label the reprimand as an order or decree in its opinion, "Granting
Partial Relief on Defendant's Request for Sanction" it stated that
Blagg's conduct "is intentional, unprofessional, and unjustified." 
This is not a mere finding of fact but an ultimate statement of
censure, intended to punish counsel, a punishment emphasized by its
publication. A linguistic reprimand is "[t]o reprove severely." 
See Black's Law Dictionary 1302 (6th ed. 1990). Therefore,
appending an "order" or "decree" to it may provide a label but adds
no operative substance; no action is required from the censuree to
make it effective. 
 Although it is not dispositive to our decision, we note
that both the bankruptcy and district courts assumed that the
reprimand of Blagg and Cannon constituted sanctions. The
bankruptcy court implied by its quotation of United States v. Horn,
29 F.3d 754, 766-67 (1st Cir. 1994), that a "public[] reprimand" is
a proper method of punishing misbehaving lawyers. See 188 B.R. at
730. Similarly, the district court held that it could uphold the
"[p]ublic [r]eprimand" of Cannon and Blagg under the federal
courts' inherent power to manage its affairs and discipline the
attorneys appearing before it, even though it vacated the fine
imposed against Cannon. See 215 B.R. at 302.
 In United States v. Santtini, 963 F.2d 585, 590 (3d Cir.
1992), the court of appeals concluded that "a district court's
orders lacking the precise label 'injunction' may be appealable
under 1292(a)(1) if their effect is injunctive." It seems to me
that a deliberate declaration by a court reprimanding harshly and
stridently a lawyer, in a published opinion dealing with sanctions,
and conjunctive with an order imposing monetary fines constitutes
a sanction, even though the monetary sanctions were subsequently
vacated because of error. Indeed, the United States Supreme Court
has endorsed the use of a public reprimand in a published opinion
as a method of chastising a lawyer in Bank of Nova Scotia v. United
States. 487 U.S. 250, 263 (1988); accord United States v. Hasting,
461 U.S. 499, 506 n.5 ("The Court also could have publicly
chastised the prosecutor by identifying him in its opinion.").
 I am mindful that every pejorative expression or
criticism by a court of a lawyer is not subject to appeal. Nor
should it be if courts are effectively to function in forums of
dispute. For example, a criticism of a lawyer's performance during
trial, when intended to end that lawyer's duplicative questioning
of a witness or introduction of irrelevant evidence, and not
intended as a sanction, may not be appealed. Criticism and
directions to courts and parties are essential tools of a trial
judge to control the litigation in the court. In contrast, a
public reprimand of an attorney in a published opinion which is
specifically intended as punishment for misconduct stands in a
different category; it should be appealable, even though the label
of an order is absent. A censure of this sort can be harsh
punishment because presumably it will adversely affect a lawyer's
reputation and strongly deter future misconduct because of its
sharp and public rebuke. Further, this court and others agree.
 According to the majority, vacating the monetary fines,
as the bankruptcy court and the district court together did here,
deprives this court of jurisdiction. The majority hold that
because the monetary sanctions have been vacated, "we lack
jurisdiction to consider the propriety of the offending findings."
Maj. op. at 10. The absence of monetary sanctions should in no way
adversely affect the appealability of the reprimand. Monetary
sanctions only affect one's bank account; linguistic sanctions can
be far more penetrating and damaging. They can pierce the heart
and the reputation of the lawyer at whom they are aimed, and, in
the long run, probably will strike the lawyer's bank account as
well.
 In Walker v. City of Mesquite, 129 F.3d 831 (5th Cir.
1997), the United States Court of Appeals for the Fifth Circuit
concluded that an attorney may appeal a public reprimand even when
no monetary sanctions have been imposed. The court reasoned that
an attorney's professional reputation is "a lawyer's most important
and valuable asset." Allowing an appeal when an attorney has been
fined a nominal amount but denying an appeal from "a finding and
declaration by a court that counsel is an unprofessional lawyer" is
anomalous. A lawyer may suffer much more because of injury to his
reputation caused by a public rebuke than by a fine. Id. at 832. 
Also, without discussion, the Fifth Circuit permitted an appeal of
a reprimand of attorneys which included a finding primarily that
they acted in bad faith, but did not impose a monetary sanction. 
See Dawson v. United States, 68 F.3d 886, 894-95 (5th Cir. 1995).
 Similarly, the District of Columbia Circuit allowed an
appeal by an attorney from a finding by the Court's disciplinary
committee that the attorney engaged in misconduct even though the
committee did not impose a monetary penalty. See Sullivan v.
Committee on Admissions & Grievances, 395 F.2d 954, 956 (D.C. Cir.
1967). The Court rejected the contention that a penalty other than
an reprimand was required in order to permit an appeal, likening
the disciplined attorney to a criminal defendant that is convicted
but whose sentence is suspended. Id. at 956; see also Fromson v.
Citiplate, Inc., 886 F.2d 1300, 1304 (Fed. Cir. 1989).
 The majority is fearful that permitting anything less
than a "formal reprimand" to form the predicate for an appeal will
invite litigation. Maj. op. at 13. It seems to me that the
determining factor should not be the formality of the reprimand but
its essential substance. In our analysis of our appellate
jurusdiction, "we are not constrained by the district court's
characterization of its order." See Bailey v. Systems Innovations,
Inc., 852 F.2d 93, 96 (3d Cir. 1988). Labeling a public reprimand
as an order adds nothing significant; the substance is in the
content. An attorney who is publicly reprimanded, (i.e., for the
purpose of punishing him and deterring others from similar
behavior) for misconduct should be entitled to review. Such a
reprimand rises above the permissible perimeters of mere criticism. 
Allowing an appeal in such a situation does not invite litigation
of every adverse factual finding or criticism of attorney behavior
in the conduct of litigation as the majority suggests. Rather, it
merely equates public reprimands with the same jurisdictional rules
that are applied to appeals of monetary sanctions.
 I also believe that the majority is unduly concerned that
appeals from findings will be unopposed. Maj. op. at 13. In this
case, as I have already noted, we are not concerned with basic
findings of fact but with "a declaration of the court announcing
the legal consequences of the facts found." Black's Law Dictionary410 (6th ed. 1990) (defining "Decree"). This declaration is, in
effect, a "decree" which answers "for most purposes to the judgment
of a court of law." Id. An appeal in such situations is no more
unopposed than is an appeal from monetary sanctions. Had the
monetary sanctions not been vacated in these proceedings and the
appeal allowed, there is nothing that requires or even suggests
that the appeal would have been opposed.
 The majority also reasons that "policy implications"
militate against allowing the appeal. It fears that permitting the
appeal would charge an appellate court with enforcing an inherently
undefinable standard of what constitutes an appropriate judicial
comment on an attorney's performance and chill trial judges from
speaking and writing candidly. Maj. op. at 14. Considerations of
practice and policy lead the majority to conclude that "a jurist's
derogatory comments about a lawyer's conduct, without more, do not
constitute a sanction." Maj. op. at 14. I believe the majority's
fears are groundless.
 What is before us are not mere "derogatory comments." 
There is much more. Here, we have a chastisement enhanced by
publication. The chastisement was conjoined with monetary fines
which were vacated because of legal error. Moreover, the
chastisement was not merely derogatory; it was imposed after a
three day hearing held primarily for the imposition of sanctions
for alleged misbehavior, and which were intended to be punitive. 
This censure did not amount to mere comments or criticism made
during the heat of trial. The court's declaration was not an
ordinary, derogatory comment but a deliberate, written, published
reprimand after hearing, intended to punish and deter, followed
with monetary fines. In my opinion, this was an unequivocal
sanction.
 As for the majority's concern that a trial judge should
retain the power to comment, sternly when necessary, on a lawyer's
performance, I could not agree more. However, allowing an appeal
from a public reprimand intended to punish and, in this case,
simultaneously accompanied by monetary fines, in no way impinges on
a trial judge's right to criticize or comment on an attorney's
performance. A trial judge still retains broad, unappealable
authority and the whole vocabulary to make pejorative comments or
criticisms of a lawyer's performance without engaging in deliberate
or published chastisement.
 For example, hard-nosed and even caustic criticism of a
lawyer's behavior, when intended to put a stop to that lawyer's
misconduct, or even when the criticism is intended to control less
offensive attorney behavior such as duplicative questioning of a
witness or introduction of irrelevant evidence, and not intended as
a sanction, are all ordinary efforts at courtroom administration
and may not be appealed. See United States v. Donato, 99 F.3d 426,
434 (D.C. Cir. 1996); cf. Hook v. McDade, 89 F.3d 350, 355-56 (7th
Cir. 1996) (judge's "strong" criticism of criminal defendant's
recusal motion did not show bias), cert. denied sub nom., 117 S.
Ct. 718 (1997); Blanche Road Corp. v. Bensalem Twp., 57 F.3d 253,
266-67 (3d Cir. 1995) (district court's calling counsel's direct
examination "worst" it had ever seen not basis for judge's
recusal). Also, a district court's finding that a witness's
testimony was untruthful or that an expert witness's opinion cannot
be credited may not, on their own, be appealed. Cf. Sun-Tek
Indus., 856 F.2d at 176; Bolte, 744 F.2d at 573. 
 Allowing attorneys to appeal a public reprimand does not
limit or chill the trial courts' broad power to administer justice
and control their courtroom. Indeed, criticism and directions to
parties are essential tools of a trial judge to control the
litigation in the court. None of the hypothetical examples cited
above constitutes a sanction or disciplinary action because they
are not intended to punish or deter. See National Hockey League,
427 U.S. at 643. Because we cannot foresee every possible
circumstance under which tough criticism is appropriate and
justified, these are only a few examples of proper and unappealable
criticism, and not an exhaustive list. We note that criticism that
is not contained in a published opinion will almost never be
appealable.
 In determining whether a judge's comments constitutes a
sanction, we find helpful the cases dealing with motions to recuse
judges based on bias. In Liteky v. United States, 510 U.S. 540
(1994), the Supreme Court held that expressions of impatience,
hostility toward counsel, dissatisfaction, annoyance, and anger by
judges is not a basis for recusal. Id. at 556; see also Offutt v.
United States, 348 U.S. 11, 17 (1954) (a "modicum of quick temper
... must be allowed even judges"). The Court reasoned that
ordinary efforts at courtroom administration, even when expressing
extreme anger and hostility, must be immune from challenges on this
ground if the courts are to perform properly. Id.; see alsoBlanche Road, 57 F.3d at 266. The same reasoning applies in the
context of this case. Hence, a judge's criticism or unfavorable
characterization of a lawyer's conduct when intended as an
"ordinary effort at courtroom administration" is not subject to
appeal. 
 In contrast, a public reprimand of an attorney in a
published opinion which is specifically intended to chastise and
punish for misconduct stands in a different category. A censure of
this sort can be harsh punishment because presumably it will
adversely affect a lawyer's reputation and career and strongly
deter future misconduct because of its sharp and public rebuke. In
such an instance, there are strong policy consideration for
allowing such an appeal.
 Under the majority's view, it is possible for a judge to
harshly censure or chastise the lawyer in a published opinion and
intend to punish but avoid appellate review. The trial judge can
escape appellate review of an unfounded or intemperate censure
merely by refraining from labeling the public reprimand as an order
or decree.
 On the other hand, a policy consideration that strongly
favors the appealability of the reprimand is that lawyers are
quasi-officers of the court. Many of them appear in court on
almost a daily basis. For approximately two centuries, the lawyers
of this nation have been the Constitution's guardians. 
Notwithstanding the transformation of the legal profession in
recent years, lawyers still remain the lifeblood of our legal
system. Denying them the right to an appeal in a matter impugning
their character, competence or integrity in a trial matter and
which publicly and harshly censures them merely because the
chastisement is not expressly a "formal reprimand" exalts form over
substance. I fear that lawyers will not regard such a technicality
as an improvement of the image and quality of justice of our legal
system.
 Apparently recognizing that lawyers may be without a
remedy, the majority suggests that the chastised lawyer may
petition for a writ of mandamus to expunge the offensive censure
from the record. Mandamus, however, is a slender reed on which to
lean for appellate review. It is an extraordinary writ and a court
of appeals should not utilize it "when it can exercise the same
review by a contemporaneous ordinary appeal." See Moses H. Cone
Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 8 n.6 (1983);
see also 16 Charles Alan Wright et al., Federal Practice and
Procedure, 3935.7, at 644 (2d ed. 1996) ("If almost any form of
trial correction is susceptible to correction by appellate writ,
courts of appeals remain most reluctant to grant writ review .")
The writ of mandamus will not be granted if a direct appeal is
available, Roshe v. Evaporated Milk Assn, 319 U.S. 21, 26 (1942),
and courts are reluctant to grant it except in most exceptional
cases. See 19 Moore's Federal Practice, 204.03 [1] (Matthew Bender
3d ed. 1997). Even the majority in this case cautions that it must
be employed "sparingly." Maj. op. at 18. Thus, I do not see the
writ of mandamus as a satisfactory optional remedy.
 IV.
 Considering the sanction here as appealable, I turn to a
question that the majority did not have to consider but which I
must in light of my conclusion that the appeal should not be
rejected: Does the court have appellate jurisdiction to review the
district court's order when the underlying litigation remains
unresolved? Cannon and Blagg contend that we have jurisdiction
pursuant to 28 U.S.C. 158(d) because the district court's opinion
is a final order. I agree.
 Section 158(d) permits parties to appeal from "all final
decisions, judgments, orders, and decrees" entered by the district
court in bankruptcy matters. 28 U.S.C. 158(d). Generally, an
order is "final" in an adversary action in the bankruptcy court
only if it "ends the entire adversary proceeding 'on the merits and
leaves nothing for the court to do but enter the judgment.'" In re
Unanue Casal, 998 F.2d 28, 31 (1st Cir. 1993) (quoting Stringfellow
v. Concerned Neighbors in Action, 480 U.S. 370, 375 (1987)); seealso In re Harrington, 992 F.2d 3, 6 n.3 (1st Cir. 1993). The
district court's opinion in the instant case only resolved whether
the sanctions imposed against Cannon and Blagg were not erroneous. 
It did not resolve the merits of the underlying litigation; there
is no question that the amount and dischargeability of Williams'
federal income tax liability remains undecided. Hence, the order
is not final in the traditional sense.
 Nonetheless, pursuant to Cohen v. Beneficial Indus. Loan
Corp., 337 U.S. 541 (1949), and its progeny, appeal of a small
class of what are customarily considered non-final orders is
permitted. See In re Unanue Casal, 998 F.2d at 31 (Cohen doctrine
applies in bankruptcy proceedings). Cohen established "the
collateral order doctrine" and permits an appeal when the relevant
order (1) involves an issue unrelated to the merits of the case,
and which is capable of being reviewed without disrupting the main
dispute, (2) constitutes a complete resolution of the issue and is
not unfinished or inconclusive, (3) involves a right incapable of
vindication on appeal from a final judgment, and (4) involves an
important and unsettled question of controlling law. See Appeal of
Licht & Semonoff, 796 F.2d 564, 570-71 (1st Cir. 1986); see also In
re Newport Sav. & Loan Ass'n, 928 F.2d 472, 474 (1st Cir. 1991)
(citations omitted).
 This court has not previously decided the issue presented
in this case: whether an order sanctioning an attorney who no
longer represents a party in the underlying dispute is immediately
appealable. Our decision in Licht and Semonoff, however, offers
some guidance. There, this court dismissed an immediate appeal of
a sanctions order because the order was not final and did not fit
within the collateral order doctrine recognized in Cohen. The
court dismissed counsel's appeal because it did not meet the third
element of the Cohen test; counsel would not be prevented from
obtaining meaningful review of the sanctions order following
termination of the litigation either by entry of final judgment or
settlement, because he still continued to represent the plaintiff
in the underlying litigation. 796 F.2d at 572. He remained
involved in the proceedings and would have an opportunity to appeal
the sanctions order following termination of the litigation.
 In the instant case, there is no contention that Blagg
ever represented the United States in the underlying dispute. 
Indeed, the bankruptcy court vacated its $750 sanction against him
because he never entered an appearance on behalf of the United
States. See In re Williams, 188 B.R. at 728-29. Cannon has also
terminated his representation of the United States in the
underlying matter.
 In Licht & Semonoff, the court specifically refused to
opine on the question raised by the facts of the instant case. Id.
at 572. The court cited several cases which held that immediate
appeal of a sanctions order is permitted under the collateral order
doctrine when the sanctioned attorney ends his representation of
the party in the underlying dispute. See id. (collecting cases). 
With regard to those cases the court stated: "We express no opinion
as to the appealability of sanctions against a nonparty or an
attorney no longer litigating the case ." 796 F.2d at 572. The
cases cited there permit review under the collateral order doctrine
because the withdrawing attorney, by virtue of his lack of notice
of the progress of the litigation, might lose his right to appeal. 
He may not be notified of the entry of a final judgment in time to
take an appeal. Also, an immediate appeal would not disrupt the
progress of the underlying dispute. See, e.g., Eavenson, Auchmuty
& Greenwald v. Holtzman, 775 F.2d 535, 539 (3d Cir. 1985);
Westmoreland v. CBS, Inc, 770 F.2d 1168, 1172 (D.C. Cir. 1985); seealso Licht & Semonoff, 796 F.2d at 572 (collecting cases).
 Because Blagg and Cannon do not represent the Government
in the underlying litigation, there is a strong likelihood that
they will lose their right to obtain review of the orders if it is
not done immediately. Neither has a right to be notified of the
progress of the underlying litigation or its settlement. Thus,
there is a strong likelihood that the litigation will terminate
without notice to them, resulting in the loss of their appellate
rights. See Eavenson, 775 F.2d at 539. Moreover, I discern no
impediment to the underlying litigation by allowing this appeal of
the sanctions to proceed at this time. Finally, the appeal raises
important questions of law. The appeal, therefore, satisfies the
Cohen test.
 V.
 In sum, I would allow the appeal and hold that under
the Cohen test the published reprimand is immediately appealable. 
Thus, I would review the case on the merits.
 For the foregoing reasons, I therefore respectfully
dissent.